773 P.2d 1156

**Verna L. SIMONS,
Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Verna L. SIMONS,
Defendant–Appellant.**

**Nos. 17123, 17253.**

Court of Appeals of Idaho.

May 5, 1989.

Kenneth F. White, Nampa, for petitioner-appellant.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

BURNETT, Judge.

This case is before us a second time. Upon her plea of guilty, Verna L. Simons stands convicted of involuntary manslaughter. She has received a ten-year indeterminate sentence for the crime. Her judgment of conviction, including the sentence, was affirmed by this Court in *State v. Simons*, 112 Idaho 254, 731 P.2d 797 (Ct. App.1987) (*Simons I*). She now appeals from orders denying an application for

post-conviction relief and a motion for reduction of sentence under I.C.R. 35. We must decide three questions: (1) whether, in the circumstances presented here, the involuntary manslaughter statute was displaced by the vehicular manslaughter statute; (2) whether the plea of guilty to involuntary manslaughter was supported by an adequate factual basis; and (3) whether the district court abused its discretion by refusing to reduce the sentence under Rule 35. We affirm the orders of the district court.

The issues are framed by unique and tragic facts. On the evening of January 26, 1984, Simons became involved in an altercation with J.D. Jameson, with whom she lived. Simons decided to leave home. She got into a car, locked the doors and began to drive away. Jameson evidently tried to dissuade or to prevent her from leaving, but was unsuccessful. His hand became caught in the passenger door between the window and frame. Simons did not stop the car and release Jameson. Instead, she drove some seven or eight miles to the nearby city of Caldwell, dragging Jameson to his death. After entering the city, Simons was stopped by the police. Simons claimed that she was drunk and that she did not know Jameson was attached to her car. A test disclosed that she had a blood alcohol level of .26% at the time of the incident.

The Canyon County prosecutor initially charged Simons with second degree murder. He later amended the charge, and Simons pled guilty to involuntary manslaughter. After a hearing, the district court accepted her plea. The judge, Hon. Roger L. Williams, ordered a presentence investigation and conducted a sentencing hearing. Noting Simons' guilty plea, and rejecting an argument that Simons had acted without real culpability on the evening in question, Judge Williams imposed the ten-year indeterminate sentence. Simons filed her unsuccessful appeal in *Simons I,* and she later submitted a pleading which combined an application for post-conviction relief with a motion for reduction of sentence under Rule 35. The application and motion were denied in separate orders issued by another judge, Hon. Jim R. Doolittle. Consolidated appeals were taken from Judge Doolittle's orders.

## I

We first consider Simons' argument that any crime committed in this case was a vehicular manslaughter rather than an involuntary manslaughter. As a preface to our discussion, we note that the state has questioned whether such an issue comes within the purview of the Post–Conviction Procedure Act. We think it does.

Idaho Code § 19–4901(a)(1) provides that post-conviction relief may be sought from a "conviction or ... sentence ... in violation of the ... laws of this state." Here, Simons contends that Jameson's death occurred solely because she was driving under the influence of alcohol. Therefore, notwithstanding her plea of guilty to involuntary manslaughter under I.C. § 18–4006(2), she argues that the vehicular manslaughter statute, I.C. § 18–4006(3), governs the case as a matter of law. Accordingly, her argument continues, the ten-year indeterminate sentence in this case is contrary to state law because the maximum penalty for vehicular manslaughter is seven years. *See* I.C. § 18–4007(3). This argument is cognizable under I.C. § 19–4901(a).

We acknowledge, of course, that a claim for post-conviction relief might come within I.C. § 19–4901(a), yet also be subject to dismissal under I.C. § 19–4901(b) because it embraces an issue that should have been raised on direct appeal. However, such peremptory disposition of the claim may serve only to invite another application grounded upon the allegedly ineffective assistance of counsel. Perhaps for that reason, Judge Doolittle chose in this case to address the application on its merits, writing a comprehensive memorandum decision. We will conduct our appellate review accordingly.

## A

All forms of manslaughter are defined in an omnibus statute, I.C. § 18–4006. The

statute is a creature of history, evolving through a series of strung-together amendments. We will discuss the statute's evolution in order to shed light on its contemporary meaning. We will not address every amendment, but will focus on those which are germane to our analysis.

The crime of involuntary manslaughter finds its earliest roots in an 1864 territorial statute. *See* 1864 Sess.Laws, Second Territorial Session, Cr. & P., §§ 18–21, p. 438. The statute defined involuntary manslaughter as follows:

Involuntary manslaughter shall consist in the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner:

*Id.* at 439. Unfortunately, our research discloses no case law interpreting this early statute. In any event, the statute was amended in 1887. In the 1887 Revised Statutes of Idaho, § 6565, p. 726, we find the following:

Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

.  .  .  .  .

2. Involuntary—In the commission of an unlawful act, not amounting to [a] felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

Under this version of the statute, a defendant could be convicted of involuntary manslaughter if a death resulted from the commission of a lawful act "without due caution or circumspection," as well as if the death resulted from the commission of a lawful act "in an unlawful manner."

There are a number of Supreme Court cases interpretating this version of the statute. Early in this century, the Court held that an "unlawful killing," though unintentional, was an involuntary manslaughter. *In re Heigho*, 18 Idaho 566, 110 P. 1029 (1910). The Court also held that the statute did not circumscribe the means of death. A defendant could be guilty of in-

voluntary manslaughter even if the victim died of fright.

The Supreme Court also drew a distinction between the commission of an "unlawful act" and the commission of a "lawful act . . . in an unlawful manner." In *Heigho*, the Court indicated that an unintended death which resulted from a battery (an intentional act) was caused by an "unlawful act." 18 Idaho at 576, 110 P. at 1032. On the other hand, the Court elsewhere declared that a death caused by the careless discharge of a gun during a hunting trip was a homicide resulting from the commission of a "lawful act . . . in an unlawful manner." *State v. McGinnis*, 12 Idaho 336, 85 P. 1089 (1906). Thus, the seemingly opaque phrases "unlawful act" and "lawful act [committed] in an unlawful manner" were clarified to mean intentional or negligent acts, respectively, producing unintended death.

The statute was amended again in 1921. *See* 1921 Idaho Sess. Laws, ch. 155, § 1, p. 347. As amended, the statute provided as follows:

Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

.  .  .  .  .

2. Involuntary—In the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection.

*Id.* at 347–48. Prior to this amendment, the term "unlawful act" had been followed by the phrase "not amounting to a felony." This general limitation upon intentional acts producing death was deleted, and enumerated exceptions were substituted.

The Supreme Court issued a number of important decisions concerning the 1921 statute. First, it held that the state was required to prove "criminal" as opposed to ordinary negligence, if an involuntary manslaughter charge was based upon the commission of a "lawful act . . . in an unlawful manner, or without due caution and circumspection." *State v. McMahan*, 57 Idaho

240, 65 P.2d 156 (1937). Second, the Court determined that the state was not required to prove any separate "criminal" intent if the homicide was a result of an "unlawful act." *State v. Salhus*, 68 Idaho 75, 189 P.2d 372 (1948). Finally, the Court exhibited some uncertainty as to whether homicides arising from reckless driving were to be treated as deaths resulting from "unlawful acts," or as deaths caused by negligent conduct (that is, commission of "lawful acts ... in an unlawful manner"), or as either. *See State v. Hintz*, 61 Idaho 411, 102 P.2d 639 (1940); *State v. Salhus, supra.*

The next amendment dealt in part with the motor vehicle issue. *See* 1949 Idaho Sess.Laws, ch. 126, § 1, p. 221. The amended statute, as it appeared in the enacting bill, provided as follows:

17–1106. Manslaughter Defined.—Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

.     .     .     .     .

2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, kidnapping, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection *; or in the operation of a motor vehicle in a reckless, careless or negligent manner which produces death; or in the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death.

17–1107. Punishment for Manslaughter.—Manslaughter is punishable * * * as follows:

1. Voluntary—by imprisonment in the state prison not exceeding ten years.

2. Involuntary—by a fine of not more than $1,000.00, or by imprisonment in the state prison not exceeding ten years, or by both such fine and imprisonment. In the event any person sentenced to pay a fine shall fail to pay such fine in whole or in part, he may be required to serve out such fine in the state prison at the rate of one day for each $2.00 of any amount unpaid on said fine.

*Id.* at 221–22 (asterisks original).

A few years later, the foregoing provisions relating to motor vehicles were superseded by a separate "negligent homicide" statute. *See* 1953 Idaho Sess. Laws, ch. 273, § 53, p. 495. This new category of crime was defined as follows:

Negligent Homicide—(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

(b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by fine of not more than $1,000, or by both such fine and imprisonment.

*Id.* at 495–96. The "negligent homicide" statute's one-year maximum penalty stood in sharp contrast to the ten-year maximum available for involuntary manslaughter. In *State v. Davidson*, 78 Idaho 553, 309 P.2d 211 (1957), our Supreme Court held that the "negligent homicide" statute repealed by implication the 1949 version of the manslaughter statute as it pertained to motor vehicle operation. Thus, a defendant guilty of committing a homicide while driving could be sentenced to no more than a prison term of one year.

In 1965, the Legislature repealed the "negligent homicide" statute, putting the subject of motor vehicle operation back into the omnibus manslaughter statute, which by then had been codified as I.C. § 18–4006. *See* 1965 Idaho Sess. Laws, ch. 136, § 2, p. 268. The 1965 bill also contained other amendments, resulting in a long, semantically tortured statute:

Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

.     .     .     .     .

2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, kidnapping, burglary, or mayhem; or in the commission of a lawful act which might

produce death, in an unlawful manner, or without due caution and circumspection; or in the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death; or in the operation of a motor vehicle:

(a) In the commission of an unlawful act, not amounting to a felony, with gross negligence; or

(b) In the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence; or,

(c) In the commission of an unlawful act, not amounting to a felony, without gross negligence; or,

(d) In the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

Provided, this provision relating to operation of a motor vehicle shall not be construed as making any homicide in the driving of a vehicle punishable as involuntary manslaughter which is not a proximate result of the commission of an unlawful act, not amounting to a felony, or of the commission of a lawful act which might produce death in an unlawful manner.

As the substantive provisions were revised in 1965, so too were the punitive provisions:

18–4007. Manslaughter is punishable as follows:

.    .    .    .    .

2. Involuntary—by a fine of not more than $1,000.00, or by imprisonment in the state prison not exceeding ten years, or by both such fine and imprisonment, except that a violation of subsection 2 of Section 18–4006, Idaho Code, relating to the operation of a motor vehicle is punishable as follows:

(a) In the case of a violation of subdivision (a) or (b) of said subsection 2 of section 18–4006, the punishment shall be either by imprisonment in the county jail for not more than one year or in the state prison for not more than five years or by a fine of not more than $1,000.00 or by both such fine and either of said imprisonments, and in such cases the jury may recommend by their verdict that the punishment shall be by imprisonment in the county jail.

(b) In the case of violation of subdivisions (c) or (d) of said subsection 2 of section 18–4006, the punishment shall be by imprisonment in the county jail for not more than one (1) year or by a fine of not more than $500.00 or by both such fine and imprisonment.

*Id.* at 268–70.

Thus, homicides arising from the operation of motor vehicles were again proscribed in 1965 as involuntary manslaughter—but with a twist. As discussed above, prior to the "negligent homicide" statute of 1953, a manslaughter committed while driving a vehicle might have been labeled either as the commission of an "unlawful act" or as the commission of a "lawful act ... in an unlawful manner." In the latter instance, the state was required to prove "criminal" negligence; in the former, no "criminal" intent separate from the "unlawful act" was required. Under the 1965 statute, the mens rea, or mental state, requirement was re-worded. The new statute provided that the conduct encompassed by the motor vehicle provisions could be treated as involuntary manslaughter if the conduct occurred "with gross negligence" or without "gross negligence." The Supreme Court interpreted this language to signify that an involuntary manslaughter with a vehicle could be predicated upon a degree of negligence less rigid than the "criminal" negligence which had been required under the pre–1953 statutes. The state had only to prove "ordinary" negligence. *State v. Long,* 91 Idaho 436, 423 P.2d 858 (1967).

Consequently, involuntary manslaughter involving motor vehicles was classified under the 1965 statute according to whether it evinced gross negligence or ordinary negligence. If a homicide arising from the operation of a vehicle was committed with gross negligence, it amounted to a felony. If it was committed with a lesser degree of negligence, it was a misdemeanor. *See generally State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984).

The statute was again amended in 1983. *See* 1983 (Extra.Sess.) Idaho Sess.Laws, ch. 3, § 17, p. 21. The statute provided:·

> Manslaughter defined.—Manslaughter is the unlawful killing of a human being, without malice. It is of three (3) kinds:
> 1. Voluntary—upon a sudden quarrel or heat of passion.
> 2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, kidnapping, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; or in the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death.
> 3. Vehicular—in the operation of a motor vehicle:
> (a) In the commission of an unlawful act, not amounting to a felony, with gross negligence; or
> (b) In the commission of a violation of section 49–1102 or 49–1102(B), Idaho Code [driving under the influence]; or
> (c) In the commission of an unlawful act, not amounting to a felony, without gross negligence.
> Notwithstanding any other provision of law, any evidence of conviction under this section shall be admissible in any civil action for damages resulting from the occurrence. A conviction for the purposes of this section means that the person has pled guilty or has been found guilty, notwithstanding the form of the judgment(s) or withheld judgment(s).

*Id.* at 21–22. The most significant alteration of the statute in 1983 was the addition of the vehicular manslaughter section. Homicides arising from certain types of motor vehicle accidents were classified as vehicular manslaughters and were made punishable by seven-year prison terms, *see* I.C. § 18–4007(3), as opposed to the ten-year terms possible under the involuntary manslaughter provision. *See* I.C. § 18–4007(2).

The statute was amended one more time, in 1984. However, this amendment provided little material change. For substantive analytical purposes, the 1983 statute reflects the current legislative policy. More importantly for our discussion, it is the statute extant when Verna Simons dragged J.D. Jameson to his death.

## B

Against this historical backdrop, Simons has argued that the "vehicular manslaughter" section of I.C. § 18–4006 occupies the entire field of motor vehicle-related homicides, leaving no room for application of the "involuntary manslaughter" provisions. We acknowledge, for the sake of discussion, that under I.C. § 18–4006(3)(b), a drunk driver who accidentally commits an act resulting in an unintended death is guilty of "vehicular manslaughter" rather than "involuntary manslaughter." Simons relies on this provision to argue that she was charged with killing Jameson while driving under the influence of alcohol; consequently, she should have been convicted of "vehicular manslaughter" with a seven-year maximum sentence.

However, we believe Simons has mischaracterized the conduct with which she was charged. She was not charged with killing Jameson as the unintended result of accidental conduct while driving under the influence. After the prosecutor reduced the initial charge of second degree murder to involuntary manslaughter, the information charged Simons with causing Jameson's death by willfully dragging him with her car. In other words, Simons was charged with causing an unintended death through an intentional act—i.e., aggravated battery, a felony.[1] This alleged conduct was much more serious than causing an unintended death through accidental conduct while driving under the influence of

---

1. Had Simons been charged with causing a homicide while perpetrating a misdemeanor, the state might only have obtained a conviction of vehicular manslaughter. *See* I.C. § 18–4006(3)(a) and (c). However, aggravated battery is a felony. *See* I.C. §§ 18–111, 18–907, 18–908. Therefore, Simons' offense came within I.C. § 18–4006(2), the involuntary manslaughter provision.

alcohol. Drunk driving was incidental to, not essential to, the crime charged.

We are convinced that by creating the statutory section labeled "vehicular manslaughter," the Legislature did not intend to downgrade the culpability or punishment of persons who intentionally use motor vehicles to commit aggravated batteries or other felonies ultimately resulting in death. We must construe I.C. § 18–4006 to avoid absurdity and to effectuate the apparent legislative intent. *Diefendorf v. Gallet*, 51 Idaho 619, 10 P.2d 307 (1932). It would be an absurd result indeed if a driver who, although intoxicated, was capable of intentionally committing a felony that produced death—and did so—could be convicted only of vehicular manslaughter and sentenced to a seven-year term of imprisonment. The Legislature may have created a syntactical bog in the omnibus manslaughter statute, but it did not abrogate the crime of involuntary manslaughter or other serious crimes in all cases where motor vehicles are involved. We conclude that Simons' conviction of involuntary manslaughter is not contrary to law.

## II

Simons next makes a closely related argument that she lacked the requisite intent to commit the "unlawful act" (an aggravated battery) which served as the basis of the involuntary manslaughter charge. We believe the argument is meritless.

■ Simons was convicted of involuntary manslaughter upon her plea of guilty. The voluntariness of that plea was challenged and upheld in *Simons I.* In Idaho, when a defendant makes a valid plea, there is ordinarily no duty to inquire into the underlying factual basis of the plea. *State v. Coffin*, 104 Idaho 543, 661 P.2d 328 (1983). By pleading guilty, the defendant admits his or her guilt to each element of the crime charged. An exception to this rule exists when a defendant couples the plea with an express denial of actual guilt. *State v. Hoffman*, 108 Idaho 720, 701 P.2d 668 (Ct.App.1985). In such a case, the court must be independently satisfied that a strong factual basis for the plea exists.

*E.g., State v. Howell*, 104 Idaho 393, 659 P.2d 147 (Ct.App.1983).

■ Simons did not couple her plea with an express denial of actual guilt. Rather, she denied her culpability later at the sentencing hearing. This is not the kind of disavowal of guilt that triggers an obligation to ascertain a factual basis for the plea. Nevertheless, we note that the sentencing judge did, in essence, make such a determination. Judge Williams noted that although Simons denied she was ever aware of Jameson's predicament, the denial was not credible. The judge found that Simons had intended to harm Jameson. This finding is supported by the record and is sufficient to satisfy any requirement to ascertain the factual basis of the plea.

## III

■ Finally, we consider Judge Doolittle's refusal to reduce the ten-year indeterminate sentence under Rule 35. A motion to reduce an otherwise lawful sentence is addressed to the sound discretion of the judge who rules on it. *State v. Arambula*, 97 Idaho 627, 550 P.2d 130 (1976). The motion essentially is a plea for leniency which may be granted if the sentence originally imposed was, for any reason, unduly severe. *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). As we noted in *Lopez*, the criteria for evaluating a judge's refusal to reduce a sentence are the same as those applied in determining whether the original sentence was excessive. *See State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Those criteria are well known and need not be reiterated at length here. The judge may consider facts presented at the original sentencing as well as any new information concerning the defendant's rehabilitative progress in confinement. *State v. Torres*, 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984). On appeal, we similarly will examine the record of the original sentencing proceeding, together with information subsequently presented in support of the Rule 35 motion. *State v. Yarbrough*, 106 Idaho 545, 681 P.2d 1020 (Ct.App.1984).

Here, Simons could have been given a ten-year fixed term. Instead, she received an indeterminate sentence with an opportunity for parole. Because the sentence is within the statutory maximum, we will not reverse it absent an abuse of discretion. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). For the purpose of appellate review, we deem the probable duration of confinement to be one-third of this period, or forty months.

A sentence of confinement is reasonable to the extent it appears necessary to protect society and achieve the related goals of deterrence, rehabilitation and retribution. *State v. Toohill, supra.* A sentence need not serve all of these goals; in appropriate circumstances, one may be sufficient. *E.g., State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983) (focusing on deterrence). The sentencing judge, Judge Williams, was primarily concerned in this case with retribution—that is, punishment for wrongful conduct. Simons later argued in the Rule 35 proceedings that her rehabilitative prospects warranted a sentence reduction. Judge Doolittle was not persuaded. He stated:

> The Court finds that the granting of the ... motion would place too much credence upon ... rehabilitation and too little deference to the death of an individual which occurred under grievous circumstances.

Upon a full examination of the record, we conclude that the judge did not abuse his discretion in reaching this decision. We uphold the denial of Simons' Rule 35 motion.

The orders of the district court are affirmed. No costs allowed.

WALTERS, C.J., and SWANSTROM, J., concur.