815 P.2d 475

STATE of Idaho, Plaintiff–Respondent,

v.

Thomas Lyn SNOW, Defendant–
Appellant.

No. 18497.

Court of Appeals of Idaho.

July 25, 1991.

Gregory A. Jones, Kootenai County Public Defender, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

PER CURIAM.

Snow appeals from a district court order which denies Snow probation and requires him to serve a prison term. Snow's only claim in this appeal is that his sentence is excessive and, as such, is an abuse of discretion by the sentencing judge. Although Snow filed a Rule 35 motion for reduction of sentence, the March, 1990, order deny-

ing that motion is not part of this appeal. We affirm the sentence imposed by the district court.

Thomas Snow pled guilty to the crime of injury to children. I.C. § 18–1501(1). On June 14, 1989, the district court sentenced him to a total of ten years, with a fixed term of seven years, and ordered restitution to the victim. The district court also retained jurisdiction under I.C. § 19–2601(4) and ordered Snow confined for evaluation at North Idaho Correctional Institution (NICI). After receiving evaluation reports from NICI, the court relinquished its jurisdiction on December 1, 1989, allowing execution of the sentence previously imposed.

At the time of his plea, Snow admitted to inserting his finger into the anus of a four-year old boy he was baby sitting. The incident occurred when Snow was bathing this child and his one and one-half-year old sibling. The child's mother was alerted that something was wrong when the four-year old began to pick at his bottom and shied away whenever Snow was around. A visit to the Kootenai County Medical Center revealed a tear in the child's rectum. This single incident led to a complaint against Snow in which he was charged with lewd conduct with a child under sixteen. I.C. § 18–1506. In a plea bargain agreement, the charge was later amended to causing injury to a child, I.C. § 18–1501(1), to which Snow pled guilty.[1]

■ Review of a sentence by an appellate court is grounded in an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Denial of probation will not be viewed as a clear abuse of discretion if the decision comports with sentencing criteria articulated in I.C. § 19–2521. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1983). Ordinarily, if a sentence is within the statutory maximum, it will not be disturbed on appeal absent a showing of a "clear abuse of discretion." *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979); *State v. Toohill, supra.* Generally, the minimum period of confinement specified by the judge under the Uniform Sentencing Act will be considered the probable measure of confinement for purposes of sentence review. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989).

■ The minimum period that Snow must serve in the state prison is seven years, before he will be eligible for parole. Snow contends that the district judge over-emphasized the sentencing goal of protecting society, which resulted in the imposition of an excessive sentence. He argues that the district court failed to give due weight to the mitigating factors in Snow's background and to his potential to be rehabilitated. In Snow's opinion, the district court did not sufficiently rely on the recommendations of the NICI staff who urged probation.

■ The sentencing discretion of the district court is examined by the reviewing court with regard to the nature of the offense and the character of the offender. *State v. Schideler*, 103 Idaho 593, 651 P.2d 527 (1982); *see also State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). In

---

1. I.C. § 18–1501(1) states:
   [a]ny person who, *under circumstances or conditions likely to produce great bodily harm or death*, [while] ... having the care or custody of any child, willfully causes or permits the person ... of such child to be injured, ... is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years. [Emphasis added.]
   Under subpart (2) of the section, any person who commits the same acts *"under circumstances or conditions other than those likely to produce great bodily harm or death"* is guilty of a misdemeanor. (Emphasis added.)
   The amended information alleged that, "under circumstances likely to produce great bodily injury or death," Snow did commit an injury upon the child while having the child in his care or custody. At the sentencing hearing, the prosecuting attorney indicated to the judge that defendant knowingly and voluntarily pled guilty to the charge made under subpart (1) in a plea bargain agreement, even though the state conceded it was unlikely that it could prove defendant's acts were committed "under circumstances or conditions likely to produce great bodily harm or death." Apparently, defendant chose to plead guilty to the felony charge of causing injury to children simply to avoid the possibility of a fifteen-year sentence for "sexual abuse of a child," under I.C. § 18–1506.

Snow's case, the record discloses a crime against a young child, which led to a physical injury to the child.

Regarding the character of Snow, the record portrays a thirty-four-year old man beset with instabilities. Snow related to the investigators preparing the presentence report a history of alcohol and drug abuse. Noting a poor work history, the report suggests that Snow has avoided work opportunities. Apparently, he has rejected external discipline as well, as evidenced by his desertion from the U.S. Marines, although his undesirable discharge was modified to a general discharge under honorable conditions. He described his past involvement with homosexual prostitution and random obscene telephone calls where he would threaten violence. The presentence investigation report contains accounts of Snow molesting a one and one-half year old girl in California and a repeat episode in Alaska when this child was six. Snow wears the name of this child in a tattoo on his left arm. Also in Alaska, Snow reportedly drilled holes in the floor of a friend's home in order to spy on the fifteen-year old daughter during her shower. There is yet another report of sexual fondling of a five-year old child, which Snow describes as a tickling session where his hands slipped. It should be noted that no objection was made by Snow to the contents of the presentence investigation report.

The transcript of the sentencing hearing evinces the consideration given to the sentencing objectives of deterrence, punishment for wrongdoing, protection of society and rehabilitation. It was through the period of retained jurisdiction that Snow was afforded an opportunity to obtain counseling in the sexual offender program and to demonstrate his willingness to change his behavior patterns. In the comments of the NICI staff, we find mostly fair reviews, based on Snow's attitude and what is described as a "poor me" complex. The reports from the two correctional officers to which Snow draws our attention give Snow good marks for his comportment at NICI and for his effort. One states, however, that Snow has shown little remorse for his victim and that he could have been more sincere and proposed a more concrete probation plan. He goes on to say that Snow needs help in terms of counseling and suggests that Snow will continue to be a threat to children.

The report from NICI to the sentencing judge included a psychological evaluation by a staff psychologist. The psychologist perceived Snow to have a high risk of re-offense, particularly because of his resistance to treatment for his sexual misconduct, which he denies. The psychologist found Snow to be evasive and less than honest. Snow's proposed probation plan consisted of vague assertions that he would live in Denver, Colorado, with his wife and her brother's family, find work, seek therapy through the Veterans Administration and church support groups, and stay out of trouble. In mitigation, Snow told of growing up in a household where he had a bad relationship with his stepfather, where he was blamed for everything. He stated that this was his first felony and that he was amenable to rehabilitation. Most of the staff evaluations at NICI gave Snow fair to good ratings. Ultimately, however, the staff voted to recommend incarceration, rather than probation, based largely on the psychologist's evaluation of Snow's amenability to treatment.

As noted, the psychologist's report was quite negative, as the psychologist was convinced that Snow deliberately gave false or misleading answers to test questions and was malingering. In group sessions, Snow is reported to have avoided participation in an appropriate manner. The report summarized that he "comes out a high risk to reoffend on the 'Levels of Risk for Sexual Offending' and this is elevated by his lack of amenability to treatment."

With this information before him, the sentencing judge again concluded that Snow's case was an inappropriate one for probation. The judge expressed his concern over Snow's problems with children and sought to protect society from this conduct and from Snow in particular. The judge adhered to the recommendation of

NICI that Snow be committed to the custody of the Board of Correction to serve his sentence. He ordered Snow to serve the seven-year minimum term, to be followed by an indeterminate term of three years.

We conclude, as did the district court, that Snow's expressed desire to change did not manifest itself into positive steps toward treatment and rehabilitation. We concur with the decision of the district court to deny probation to Snow.

■ In challenging the length of confinement as excessive, Snow cites authority for modifying a sentence when the state's interests in protecting society and in punishing the defendant can be served by a lesser sentence. Snow also refers us to *Balla v. Idaho Bd. of Correction*, 595 F.Supp. 1558 (D.Idaho 1984), as support for his request for rehabilitation and treatment through a sentence of probation.

While rehabilitation continues to be an asserted objective of sentencing, the Ninth Circuit reversed the rationale which required Idaho under I.C. § 20–223 to establish special treatment programs for convicted sex offenders. *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 (9th Cir. 1989). *Balla* deals with an inmate's right to psychological treatment during an indeterminate period of incarceration; it does not address treatment in a probation setting as an alternative to imprisonment. Furthermore, the criminal act with which Snow was charged, injury to a child, is not itemized under I.C. § 20–223. *Balla* does little to bolster Snow's argument for a lesser sentence.

■ Snow received less than the maximum sentence: a fixed ten years allowable under I.C. § 18–1501(1). In deference to the discretion vested in the trial court, an appellate court will not substitute its view for that of a sentencing judge where reasonable minds might differ. *State v. Toohill, supra.* An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the criteria of protection of society, retribution, deterrence and rehabilitation. *Id.*

As a whole, the record reflects that Snow's inappropriate sexual behavior to-ward children has escalated over time, and there is no evidence that any reformative treatment has ever been pursued. By the sentence imposed, Snow will be punished and will be forced to contemplate the seriousness of his actions with the end of deterring him in the future. But foremost, society will be safe from Snow's predation on society's most innocent members. We hold that the sentence has not been shown to be excessive to accomplish the stated sentencing goals, and we therefore affirm the district court's order.