965 P.2d 174

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Walter Dee MOORE, Defendant–
Appellant.**

No. 23131.

Supreme Court of Idaho,
Boise, March 1998 Term.

July 20, 1998.

Wiebe & Fouser, Canyon County Public Defender, Caldwell, for defendant-appellant. Klaus Wiebe argued.

Alan G. Lance, Attorney General, Catherine O. Derden, Deputy Attorney General, Boise, for plaintiff-respondent. Catherine O. Derden argued.

TROUT, Chief Justice.

This case involves an appeal from a conviction and sentence on one count of lewd conduct with a minor child under sixteen.

## I.

### BACKGROUND

On May 5, 1995, five-year-old S.K. told her parents that a man at day care she called "Uncle Ted" had touched her genitals. Uncle Ted was later identified as the appellant Walter Moore. Moore was the father-in-law of the owner of the day care that S.K. attended briefly in the fall of 1993 and then again from October, 1994 until May, 1995. The day care was in the home of Moore's daughter-in-law. S.K. had told the day care owner that Uncle Ted had been touching her two days before she told her parents. The owner did not notify the police or S.K.'s parents of the allegation, but asked that Moore not come to her house anymore. Moore's wife was a back-up babysitter at the day care and Moore would sometimes accompany his wife when she babysat. In addition, Moore and his wife would occasionally visit the day care. Moore and his wife had lived in a camper trailer at the day care from about July 1994 until August or September of 1994. They then moved their camper trailer to Moore's

parents home in Emmett. During this time, the Moores owned a house in La Pine, Oregon, which they were trying to sell.

Upon hearing S.K.'s allegations, her parents first called the day care owner who was not home; they then called the police. Detective Robert Mack of the Boise Police Department interviewed S.K.'s parents late on the evening of May 5, but he did not interview S.K. Detective Mack arranged for S.K. to be examined at the St. Luke's CARES unit. On May 10, S.K. was interviewed by Patty Megason, a pediatric nurse at the CARES unit. A physical examination was conducted on May 24 by Dr. Gabica, who works with the CARES unit. The physical examination revealed no physical evidence of sexual abuse.

Detective Mack was finally able to meet with the day care owner on May 15 and told her of the allegations. Detective Mack also contacted Moore on the afternoon of May 17 and arranged for a meeting the next afternoon. After talking to Detective Mack, Moore contacted a local attorney. This attorney informed Moore that he did not handle criminal cases and referred him to Dennis Benjamin. Benjamin advised Moore not to talk to the police and that since no charges were pending, Moore was free to return to his home in Oregon. Moore and his wife then left for La Pine, Oregon on May 18. Moore called his supervisor at the Albertson's where he worked and told the supervisor that he had to return to Oregon to testify in a murder trial and would be unable to work for some time.

When Moore did not attend the May 18 meeting, Detective Mack contacted Moore's daughter-in-law, who told him that Moore had returned to Oregon. She also gave Detective Mack the name of the attorney Moore had contacted. Detective Mack called Dennis Benjamin who told him that he had told Moore not to talk to the police. Mack informed Benjamin that he could accompany Moore to the interview, but Benjamin told Mack that he was not representing Moore.

A grand jury indicted Moore on one count of lewd conduct with a minor under sixteen (I.C. § 18–1508). At trial, counsel for Moore objected to the admission of evidence of "flight" by Moore. Specifically, Moore objected to testimony by Detective Mack that Moore failed to attend the scheduled meeting and that other suspects attended such meetings with their attorneys. Moore also objected to testimony from Moore's supervisor about the reason Moore gave for being absent from his job, and testimony by Moore's wife about when the decision to return to Oregon was made. The basis for the objection to the latter testimony was that it violated the husband-wife privilege. Also over defense objection, the trial court admitted testimony by Dr. Gabica regarding statements made by S.K. during his examination of her. During his testimony Dr. Gabica also opined that S.K.'s history was consistent with child sex abuse. As part of its case in chief, the state called Mydell Yeager, a counselor who had examined S.K. Yeager testified that in her opinion S.K. had been sexually abused. The defense did not object to this testimony at trial. The State also produced testimony by Patty Megason who testified about the contents of the interview she had with S.K. This testimony was admitted for impeachment purposes only; however, no limiting instruction to the jury was either requested or given.

The jury returned a verdict of guilty. Moore was sentenced to a term of twenty years in prison with seven years fixed. Moore then filed a motion under I.C.R. 35 to have his sentence reduced. The trial court denied Moore's Rule 35 motion.

Moore challenges his conviction on several grounds. Moore claims the district court erred in admitting evidence of flight based on his return to Oregon, and by preventing Moore from fully explaining why he traveled to Oregon. Moore also challenges the district court's admission of testimony that Moore failed to attend a meeting with police, and testimony by Moore's wife about conversations between Moore and her. Moore also claims the district court committed fundamental error when it allowed Mydell Yeager and Dr. Gabica to testify as experts. Moore also claims that testimony by Dr. Gabica about statements made by S.K. during her medical examination were inadmissible hearsay. Finally Moore challenges his conviction

on the basis that the district court erred in failing to give a limiting instruction regarding the testimony of Patty Megason. Moore challenges his sentence claiming the district court abused its discretion in sentencing Moore to a seven year fixed term and in denying Moore's motion to have his sentence reduced.

## II.

### FLIGHT EVIDENCE

█ Admission of evidence which is probative on the issue of flight to avoid prosecution requires the trial judge to conduct a two-part analysis. *See, State v. Friedley,* 122 Idaho 321, 834 P.2d 323 (Ct.App.1992). First, the judge must determine that the evidence is relevant under I.R.E. 401, and second, the judge must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See, Id.* This Court reviews the question of relevancy in the admission of evidence de novo. *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993). A court's decision that evidence is more probative than prejudicial is reviewed for abuse of discretion. *Id.*

█ Moore argues that the district court erred by not making a determination outside the presence of the jury that the evidence offered by the State was indicative of flight. The record shows that the trial judge made a determination that the evidence was relevant.[1] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Contrary to the position taken by Moore, whether the evidence is sufficient to indicate that flight indeed occurred is a question that "should be left to argument to the jury by the parties...." *State v. Wrenn,* 99 Idaho 506, 508, 584 P.2d 1231, 1233 (1978).

█ Moore argues that his actions could not have amounted to flight because they occurred weeks after the charged conduct and he did not conceal his whereabouts. To constitute flight, it is not necessary that Moore's departure must have been both immediate and covert. "For departure to take on the legal significance of flight, there must be other circumstances present and unexplained which, together with the departure, reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt." *Wrenn* at 509, 584 P.2d at 1234. The holding in *Wrenn* contains no requirement that the departure be either immediate or concealed. In the present case, upon learning that police wanted to talk to him about the alleged sexual abuse of S.K., Moore immediately left Idaho and returned to Oregon, giving his employer a false reason to explain his sudden departure. These actions reasonably imply a consciousness of guilt and a desire to flee the jurisdiction in order to avoid prosecution. We therefore agree with the district court that the evidence was relevant and so properly admitted.

█ Moore also argues that even if the evidence were relevant, it should have been excluded on the basis of prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." I.R.E. 403. This rule, however, does not require the exclusion of all prejudicial evidence, but only that which is unfairly prejudicial such that it tends to suggest a decision on an improper basis. *State v. Floyd,* 125 Idaho 651, 873 P.2d 905 (Ct.App. 1994). As discussed below, Moore was allowed to offer alternative explanations for his move to Oregon in order to refute the State's assertion that he was fleeing prosecution. Because Moore was allowed to explain his return to Oregon, we find that the evidence of flight was not unfairly prejudicial. In admitting the evidence the court properly viewed the issue as one of discretion, acted within the boundaries of its discretion, and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991). We therefore find that the trial court did not

---

1. The trial judge stated: "[T]o me the primary *relevance* is the defendant leaving town...."

abuse its discretion in admitting the flight evidence.

Moore claims that the district court abused its discretion when it did not allow him to fully explain the reasons for his return to Oregon. It is apparent from the record that Dennis Benjamin, the attorney contacted by Moore, advised Moore that Moore was under no obligation to talk to the police and that Moore was free to return to Oregon. Moore testified that he acted in accordance with Benjamin's advice. Moore also testified that he left his job because he was afraid of being confronted with the charges in a public place. In addition, Moore testified that he lied to his employer about the reason for his leaving because he did not want it known he was being investigated for child sexual abuse. In light of this testimony, we find no merit in Moore's claim that the district court did not allow him to explain his actions.

## III.

### REFUSAL TO ATTEND POLICE INTERVIEW

■ Moore argues that the admission of testimony that he refused to meet with police violated his constitutional right to remain silent. The State counters that the testimony was offered not to show guilt, but to show that Moore was fleeing. In addition, the State argues that the prohibition against the use of a defendant's silence applies only post-arrest or post-*Miranda*. Whether the admission of evidence violates a defendant's right to remain silent is a constitutional question which this Court reviews de novo. *Harris v. State Dept. of Health & Welfare*, 123 Idaho 295, 847 P.2d 1156 (1992). This is a question of first impression in Idaho. This Court has previously held that it is clear error to admit testimony of pre-arrest silence for the purpose of inferring guilt. *State v. Hodges*, 105 Idaho 588, 671 P.2d 1051 (1983). In *Hodges*, however, the defendant had been informed of his right to remain silent although it apparently was not the standard *Miranda* warning.[2]

The United States Supreme Court has approved the use of pre-arrest, pre-*Miranda* silence to impeach a defendant who has testified at trial. *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *Brecht* does not apply in this case, however, because the testimony in question was introduced as part of the State's case in chief, and not in rebuttal to Moore's testimony. The federal circuits are split on whether pre-arrest, pre-*Miranda* silence can be used as part of the prosecution's case in chief. The First, Seventh and Tenth circuits have held that pre-arrest, pre-*Miranda* silence cannot be used except for impeachment purposes, *United States v. Burson*, 952 F.2d 1196 (10th Cir.1991); *Coppola v. Powell*, 878 F.2d 1562 (1st Cir.1989); *United States ex. rel Savory v. Lane*, 832 F.2d 1011 (7th Cir. 1987); while the Fifth, Eleventh and D.C. circuits have held that pre-arrest, pre-*Miranda* silence is admissible. *United States v. Zanabria*, 74 F.3d 590 (5th Cir.1996); *United States v. Rivera*, 944 F.2d 1563 (11th Cir. 1991); *United States v. Butler*, 924 F.2d 1124 (D.C.Cir.1991). The Ninth Circuit has specifically declined to decide this issue. *United States v. Thompson*, 82 F.3d 849 (9th Cir. 1996); *United States v. Calise*, 996 F.2d 1019 (9th Cir.1993). Several state appellate courts have held that the use by the prosecution of pre-arrest, pre-*Miranda* silence to infer guilt violates a defendant's Fifth Amendment right to remain silent. *State v. Easter*, 130 Wash.2d 228, 922 P.2d 1285 (Wash.1996); *Tortolito v. State*, 901 P.2d 387 (Wyo.1995); *State v. Palmer*, 860 P.2d 339 (Utah App. 1993); *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (Neb.1990).

■ We believe the better rule is that which holds that the defendants' Fifth Amendment right not to have their silence used against them in a court proceeding is applicable pre-arrest and pre-*Miranda* warnings. The constitutional right is always present. "While the presence of *Miranda* warnings might provide an additional reason for disallowing use of the defendant's silence, they are not a necessary condition to such a prohibition." *Savory*, 832 F.2d at 1018. *Mi-*

---

2. The *Hodges* opinion does not state who gave the warning, but presumably it was the police, since the warning was given while the police conducted a search of Hodges' room.

*randa* only defines the time at which the interrogation has become so coercive that the defendant must be advised of his rights and waive them.

> [W]ithout proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those right must be fully honored.

*Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

The constitutional right against self-incrimination is not absolute, however, and applies only when the silence is used solely for the purpose of implying guilt. In the present case, the testimony about Moore's failure to meet with Detective Mack was admitted to show that Moore fled the jurisdiction when he became aware of the investigation into the alleged sexual abuse of S.K. In admitting the evidence the trial court stated:

> My prior ruling isn't primarily because of the defendant's refusal to talk to Detective Mack. My prior ruling is—to me the primary relevance is the defendant leaving town, suddenly quitting his job and the agreement—or the conversation about whether or not he is going to talk to Detective Mack merely puts that in some sort of context, but that's not—if he had just not talked to Detective Mack and hadn't left town and quit his job, then my ruling may be different as far as the admissibility.

Because the evidence was probative on the issue of flight and was admitted for that purpose and not directly as an admission of guilt, we hold that the district court did not err in admitting the testimony.

## IV.

### TESTIMONY OF DETECTIVE MACK

Moore also asserts error in the admission of Detective Mack's testimony that other suspects often attend police interviews with their lawyers. This testimony had little, if any, relevance as to why Moore decided to leave Idaho, but only served to imply that innocent people attend police interviews. The trial court ruled this testimony admissible because the defense had opened the door on recross examination of Detective Mack. No where in the recross-examination is there mention of how other suspects behave when asked to attend police interviews. We therefore conclude that it was error for the court to admit this testimony.

Having concluded that the testimony was erroneously admitted, we must next undertake a harmless error analysis. "The test for harmless error . . . is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *Giles v. State,* 125 Idaho 921, 925, 877 P.2d 365, 369 (1994). In reviewing the record, we are convinced that the jury verdict would have been the same if the challenged testimony had been excluded, and so hold the error to be harmless.

## V.

### SPOUSAL PRIVILEGE

Moore claims the district court erred when it admitted testimony by his wife about a conversation in which he told her that he had been contacted by the police and had agreed to an interview with Detective Mack. Moore claims the admission of the testimony violated the husband-wife privilege of I.R.E. 504. On review, rules of evidence are treated like statutes. *Miller v. Haller,* 129 Idaho 345, 924 P.2d 607 (1996). Therefore, the interpretation of a rule of evidence, like the interpretation of a statute, is reviewed de novo. *Hanks v. State,* 121 Idaho 153, 823 P.2d 187 (Ct.App.1992).

The State argues that this issue was not preserved by a timely and specific objection. A review of the record demonstrates that counsel for Moore raised the question of privilege just prior to the start of the testimony by Moore's wife. At that time the

State indicated that it would not be asking about communications between the defendant and his wife. When the State did ask about what the defendant had told his wife, counsel for Moore renewed his objection and offered to give the specific grounds for the objection outside of the presence of the jury. The trial court rejected this offer and simply overruled the objection. In light of these facts, we find that Moore preserved the issue for appeal.

The State argues that even if the issue was preserved, there was no showing that the communication was confidential. This argument is without merit. Statements between a husband and wife are presumed to be confidential under our evidence rules unless there is some indication to the contrary. There is no evidence that there was a third party present when the communication took place and no evidence that Moore related the contents of the conversation to anyone else prior to trial. Therefore, the communication meets the requirements of confidentiality.

The State also argues that the communication was not privileged under I.R.E. 504(d)(1). Idaho Rule of Evidence 504(d)(1) provides that the husband-wife privilege does not apply to "a communication relevant to an issue concerning the physical, mental or emotional condition of or injury to a child, or concerning the welfare of a child including, but not limited to the abuse, abandonment or neglect of a child." We decline to give I.R.E. 504(d)(1) the broad reading that the State urges upon us. A more reasonable reading of the rule is that it applies only to matters directly related to the welfare of a child. In this case the only connection the communication had with the welfare of a child was that Moore was to be interviewed about an allegation of sexual abuse. We do not find this connection sufficient to invoke the application of I.R.E. 504(d)(1) and therefore hold that the admission of the testimony was in error.

Having decided that the testimony was erroneously admitted, we must again conduct a harmless error analysis. Numerous other witnesses, including Moore himself, testified that he had been contacted by the police and that an interview had been scheduled. Because the testimony by Moore's wife was repetitive of other testimony prop-

erly admitted, we are convinced that its admission did not affect the verdict and so was harmless error.

## VI.

## EXPERT WITNESS TESTIMONY

Moore argues that the district court erred in allowing Mydell Yeager and Dr. Gabica to offer expert testimony regarding the alleged sexual abuse of S.K. It is undisputed that there was no objection to this testimony at trial. Nevertheless, Moore argues that the admission of the testimony amounted to fundamental error and so no objection was necessary. We find our decision in *State v. Bingham*, 116 Idaho 415, 776 P.2d 424 (1989) to be dispositive on this issue. In *Bingham* we held that the erroneous admission of expert testimony was not subject to a fundamental error analysis. Because Moore failed to raise an objection at trial, this issue was not preserved for appeal and we decline to consider it. *Id.*

## VII.

## MEDICAL DIAGNOSIS HEARSAY EXCEPTION

Moore contends that the district court erred when it admitted, over objection, testimony about statements made by S.K. to Dr. Gabica during his examination of her. Admission of hearsay evidence under an exception is reviewed for abuse of discretion. *State v. Zimmerman*, 121 Idaho 971, 829 P.2d 861 (1992). Idaho Rule of Evidence 803(4) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the source thereof insofar as reasonably pertinent to diagnosis or treatment" are exempt from the rule against the admission of hearsay. Moore argues that because the diagnosis was negative and no treatment was given, the hearsay exception of I.R.E. 803(4) does not apply. Moore cites no authority for this argument, and there is nothing in the language of Rule 803(4) to suggest that either the diagnosis must be

positive or that treatment must be given for the exception to apply. During his testimony, Dr. Gabica explained why each of his questions and the answers given were relevant to his examination and diagnosis. We find that the statements clearly fit within the Rule 803(4) exception and thus there was no abuse of discretion in admitting them.

## VIII.

### FAILURE TO GIVE A LIMITING INSTRUCTION

During the trial, Patty Megason, a nurse who had interviewed S.K., testified about statements made by S.K. that were inconsistent with what S.K. had told others about the alleged sexual abuse. The testimony by Megason was admitted for impeachment purposes only; however, no limiting instruction to the jury was either requested or given. Moore does not deny that there was no request for a limiting instruction, but claims that the trial court erred by not giving an instruction *sua sponte*. Whether a court is required to give a limiting instruction *sua sponte* is a question of law. This Court reviews questions of law de novo. *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996). The rule applicable to this issue is I.R.E. 105.[3] By its plain language, Rule 105 only requires that a limiting instruction be given "upon request." Since there is nothing in the rule that requires the giving of a limiting instruction absent a request from Moore, we find no error in the court's failure to give an instruction *sua sponte*.

## IX.

### CUMULATIVE ERROR

Moore claims that even if the errors committed by the trial court were harmless by themselves, he is entitled to have his conviction overturned under the cumulative error doctrine. The cumulative error doctrine "refers to an accumulation of irregularities, each of which by itself might

be harmless, but when aggregated, the errors show the absence of a fair trial, in contravention of the defendant's constitutional right to due process." *State v. Peite*, 122 Idaho 809, 822, 839 P.2d 1223, 1236 (Ct.App. 1992) (citation omitted). The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial. *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). In the present case, the district court erred in allowing Detective Mack to testify about the attendance of other suspects at police interviews and by allowing testimony by Moore's wife in violation of the husband-wife privilege. Viewing these errors in relation to the totality of the evidence presented at trial, we do not find that they were of such magnitude that Moore was denied a fair trial. We therefore find that the cumulative error doctrine does not require reversal of Moore's conviction.

## X.

### SENTENCING

Sentencing decisions are reviewed for an abuse of discretion. *State v. Wersland*, 125 Idaho 499, 873 P.2d 144 (1994). Moore contends that the trial court abused its discretion in sentencing him to twenty years with seven years fixed. Moore challenges his sentence on the court's failure to consider his lack of prior convictions and his rehabilitation potential. Moore further argues that the court failed to give adequate consideration to parole and that the sentence was longer than necessary to meet the goals of sentencing.

This Court has stated that the four objectives of criminal punishment are: (1) protection of society; (2) individual and public deterrence; (3) possible rehabilitation; and (4) punishment or retribution. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). In determining if the sentencing court abused its discretion, the reasonableness of the sentence is the fundamental requirement. *State*

---

**3.** I.R.E. 105 states: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another

purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added).

*v. Dillon,* 100 Idaho 723, 604 P.2d 737 (1979). For the purpose of appellate review, the fixed portion of the sentence imposed is the term of confinement. *State v. Broadhead,* 120 Idaho 141, 146, 814 P.2d 401, 406 (1991), *rev'd. on other grounds,* 121 Idaho 385, 825 P.2d 482 (1992). A sentence will be overturned only if it was excessive under any reasonable view of the facts. Thus, where reasonable minds might differ the sentence imposed will be upheld. *Id.*

Moore first argues that the sentence was unreasonable because the trial judge in imposing the sentence focused on deterrence and punishment, and not Moore's potential for rehabilitation. This argument was previously rejected by this Court in *State v. Adams,* 99 Idaho 75, 577 P.2d 1123 (1978). In *Adams,* this Court affirmed a sentence which the district court acknowledged had no rehabilitative value for the defendant, but was imposed simply to deter others from committing similar offenses. Therefore, the fact that Moore may not receive treatment in prison does not, by itself, make the sentence unreasonable.

Moore also argues that the district court's failure to disclose why a period of seven years was necessary to protect society casts doubt upon the propriety of the sentence. In making this argument, Moore focuses on his lack of prior convictions. Moore fails to note that at sentencing he admitted to having molested a total of 18 girls over a period exceeding 30 years. The three oldest victims were ten and eleven years old, while the ages of the rest of the victims ranged from three to seven years old. Four of the victims were Moore's nieces. The molestation of these victims came to light only when Moore asked their mothers to serve as character witnesses for him. The two earliest victims were Moore's cousins. All but two of the remaining children that Moore molested were the children of family friends. The last two victims, including S.K., attended the day care run by Moore's daughter-in-law.

■ In sentencing, the trial court is not bound by the crime the defendant was convicted of, but can "consider a broad range of information on sentencing, and the scope of its inquiry is largely unlimited as to either the type or the source of information." *State v. Gallipeau,* 128 Idaho 1, 5, 909 P.2d 619, 623 (Ct.App.1994) (citations omitted). In considering Moore's long history of sexual abuse of children, the young age of his victims, the fact that many of the victims were family members or the children of friends, and Moore's attempt to use the parents of his victims as character witnesses, we cannot say that the sentence was unreasonable under the facts. Thus, since reasonable minds could differ, the sentence is affirmed.

■ Moore also objects to a remark by the district court judge that he had in mind a "benchmark" sentence of 20 years with seven fixed and that nothing in the sentencing hearing had caused him to vary from that sentence. A judge is certainly entitled to formulate some idea prior to the sentencing hearing of what an appropriate sentence might be so long as the judge keeps an open mind to consider the evidence presented at the hearing. The district judge's remark here that he had heard nothing in the sentencing hearing to change his mind shows that he was not applying some unalterable standard, but that after sitting through the trial and reviewing the presentence report, he had formed an opinion of what sentence would be appropriate. Thus, we find that this remark does not require us to overturn Moore's sentence.

■ Moore also argues that the district court abused its discretion in denying probation. "Denial of probation will not be viewed as a clear abuse of discretion if the decision comports with the sentencing criteria articulated in I.C. § 19–2521." *State v. Snow,* 120 Idaho 277, 278, 815 P.2d 475, 476 (Ct.App.1991) (citation omitted). Here the record clearly reflects that the district judge considered the § 19–2521 factors. Considering Moore's long history of sexual abuse of young girls, the court had sufficient information to conclude that probation was not appropriate. A court's determination that the objectives of punishment, deterrence, and protection of society outweigh the goal of rehabilitation should not be overturned unless that determination is unreasonable under the facts. *State v. Salgado,* 123 Idaho

247, 846 P.2d 249 (Ct.App.1993). In this case, the denial of probation was not unreasonable in light of the facts.

## XI.

### MOTION TO REDUCE SENTENCE

 The criteria for examining rulings denying a request for leniency under I.C.R. 35 are the same as those applied in determining whether the original sentence was reasonable. If the sentence was not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with his motion for reduction.

*State v. Stringer,* 126 Idaho 867, 870, 893 P.2d 814, 817 (Ct.App.1995) (citations omitted). The only additional evidence presented by Moore in his Rule 35 motion was a polygraph test which indicated that Moore had been truthful in revealing his past sexual abuse of young girls. In its order denying the motion, the district court noted the results of the polygraph, but again concluded that the objectives of punishment, deterrence and protection of society outweighed the need for rehabilitation. When a court reasonably determines that other sentencing objectives outweigh the goal of rehabilitation, the court does not abuse its discretion in denying a motion for leniency under Rule 35. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984); *see also, Simons v. State,* 116 Idaho 69, 773 P.2d 1156 (Ct.App.1989). Since the addition of the polygraph test did not make the previously imposed sentence unreasonable, the district court did not abuse its discretion in denying the Rule 35 motion.

## XII.

### CONCLUSION

For the reasons stated above, the conviction and sentence of the defendant are hereby affirmed.

JOHNSON and WALTERS, JJ., concur.

SILAK, Justice, concurs in part and dissents in part.

I concur in the Court's opinion, but dissent from Part III. The Court has permitted the evidence concerning Moore's failure to meet Detective Mack to be admitted in the State's case-in-chief to prove flight. In so doing, the Court has created a large exception to the general rule it states here, that pre-arrest, pre-*Miranda* warning silence can be used only to impeach a defendant who has testified at trial. Such an exception goes beyond what the United States Supreme Court precedents permit. The Supreme Court has permitted pre-arrest, pre-*Miranda* warning silence to be used only to impeach a defendant's exculpatory trial testimony. *Brecht v. Abrahamson, supra; Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980). The majority here has permitted evidence to come in, not to impeach, but as part of the case-in-chief.

The Court's opinion states "[t]he constitutional right against self-incrimination is not absolute, however, and applies only when the silence is used solely for the purpose of implying guilt." The majority opinion does not cite any authority for this proposition. The Ninth Circuit noted that whether evidence of pre-arrest, pre-*Miranda* silence can be used for purposes other than impeachment has not been addressed by the United States Supreme Court. *United States v. Thompson,* 82 F.3d 849, 854–55 (9th Cir.1996).

The Court's opinion cites cases from the Fifth, Eleventh and District of Columbia federal circuits for the proposition that these circuits have admitted evidence of the defendant's pre-arrest, pre-*Miranda* silence for purposes other than impeachment. This authority is not persuasive. In *United States v. Butler,* 924 F.2d 1124 (D.C.Cir.1991), the court allowed evidence of pre-*Miranda* silence to be admitted after the defendant had testified. Essentially, this evidence was used to impeach the defendant. *Id.* at 1129. In *United States v. Zanabria,* 74 F.3d 590 (5th Cir.1996), the Fifth Circuit stated that pre-arrest, pre-*Miranda* silence is not protected under the Fifth Amendment because the Fifth Amendment only protects against compelled incrimination and silence is not com-

pelled, but makes this assertion without any analysis or citation to any authority. *Id.* at 593. The Circuit's conclusion was criticized in *State v. Easter*, 130 Wash.2d 228, 922 P.2d 1285, 1291 (Wash.1996). In the Eleventh Circuit, the court relied upon *Jenkins* to allow pre-arrest, pre-*Miranda* silence to be introduced in the prosecution's case-in-chief. *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir.1991). However, as noted by the Washington Supreme Court in *State v. Easter*, 130 Wash.2d 228, 922 P.2d 1285 (Wash. 1996), a case cited by the majority, *Jenkins* stands for the proposition that the evidence of silence can be used to impeach the defendant, a different purpose than allowing the evidence to be used in the prosecution's case-in-chief. *Easter*, 922 P.2d at 1291.

The Court's opinion cites several decisions from state supreme courts which have held that use of pre-*Miranda* silence to imply guilt violates the defendant's right to remain silent. These cases have only allowed pre-arrest, pre-*Miranda* silence to be used for purposes of impeachment. In *Easter*, the Washington Supreme Court stated, "The cases that have permitted testimony about the defendant's silence have done so only for the limited purpose of impeachment after the defendant has taken the stand, and not as substantive evidence of guilt when the defendant has not testified." *Easter*, 922 P.2d at 1289. In *Easter*, the prosecution argued that the evidence of silence was admissible because it went to the defendant's credibility and as to why he was acting as he was. The *Easter* Court rejected this argument, stating that the defendant had not testified and therefore, use of the silence for impeachment purposes was not an issue. *Id.* at 1290.

In summary, I conclude from all the authorities cited in the Court's opinion that to allow evidence of the defendant's pre-arrest, pre-*Miranda* silence for purposes other than impeachment exceeds the scope of any of the persuasive authority cited.

I further dispute the majority's conclusion that this evidence "was probative on the issue of flight and was admitted for that purpose and not directly as an admission of guilt ...." The flight evidence was introduced in this case to demonstrate consciousness of guilt. In closing argument the prosecutor stated: "Is it evidence of flight and consciousness of guilt to just pack up and hightail it out of here? Of course it is." Although consciousness of guilt is not identical to an admission of guilt, the admission of evidence concerning Moore's failure to meet with the detective uses the proper exercise of Moore's Fifth Amendment right as a means of implying guilt.

Additionally, allowing the prosecution to use pre-*Miranda* silence in its case-in-chief invites abuse of the Fifth Amendment right against self-incrimination. As the *Easter* Court stated:

> The purpose of the right [against self incrimination] is to make the government obtain evidence on its own, and 'to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government.' *Doe v. United States*, 487 U.S. 201, 213, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). The right exists to put the entire load of producing incrimination evidence on the State 'by its own independent labors.' *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Easter*, 922 P.2d at 1292. This proposition was also summarized by the Utah Court of Appeals in *State v. Palmer*:

> Any time an individual is questioned by the police, that individual is compelled to do one of two things—either speak or remain silent. If both a person's prearrest speech and silence may be used against that person, ..., that person has no choice that will prevent self-incrimination.

*State v. Palmer*, 860 P.2d 339, 349 (Utah Ct.App.1993) (quoting *State v. Fencl*, 109 Wis.2d 224, 325 N.W.2d 703, 711 (Wis.1982)).

For the foregoing reasons, I therefore respectfully dissent from the Court's conclusion that the evidence of Moore's failure to meet with Detective Mack was properly admitted, and would vacate and remand for a new trial.

SCHROEDER, J., concurs in dissent.