# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41181

| | |
|---|---|
| STATE OF IDAHO, | ) 2014 Unpublished Opinion No. 845S |
| | ) |
| Plaintiff-Respondent, | ) Filed: December 5, 2014 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| VINCENT JARAMILLO, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |
| | ) SUBSTITUTE OPINION |
| | ) THE COURT'S PRIOR OPINION |
| | ) DATED DECEMBER 4, 2014 IS |
| | ) HEREBY WITHDRAWN |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for grand theft, felony eluding an officer, felony driving under the influence, and being a persistent violator, affirmed.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge

Vincent Jaramillo appeals from his judgment of conviction for grand theft, felony eluding an officer, and felony driving under the influence (DUI), with a sentencing enhancement for being a persistent violator of the law. Specifically, Jaramillo argues that the prosecutor's unobjected-to conduct in eliciting testimony regarding Jaramillo's post-custody silence and request for counsel constitutes fundamental error. For the reasons set forth below, we affirm.

# I.

## FACTS AND PROCEDURE

While en route to a report of a stolen vehicle, officers passed a pickup, which matched the description of the stolen vehicle, traveling in the opposite direction at a high rate of speed. Officers began following the pickup, which accelerated to speeds in excess of 95 mph on the rural, single-lane roads. The truck ultimately went through a stop sign at a "T" intersection, jumped an irrigation canal that ran along the intersecting road, and landed in a potato field. When officers approached the intersection, they observed a person fleeing from the passenger side of the vehicle. They pursued the suspect through the wet and muddy potato field, but lost sight of him. A few moments later, Jaramillo was apprehended by another police unit on a road bordering the potato field. Jaramillo was wearing muddy, wet clothing that matched the officers' description of the suspect in the field. While placing Jaramillo under arrest, officers noticed that he had bloodshot, glassy eyes and smelled strongly of alcohol. Jaramillo refused to perform field sobriety tests or provide a breath alcohol sample, so a blood draw was performed, which revealed a blood alcohol content of 0.193--more than twice the legal limit.

Jaramillo was charged with grand theft, I.C. §§ 18-2403(1) and 18-2407(1)(B); felony eluding an officer, I.C. § 49-1404 (2)(A); and DUI, enhanced to a felony for being a third or subsequent offense, I.C. §§ 18-8004(1)(a) and 18-8005(6). Additionally, the state sought a persistent violator sentencing enhancement, I.C. § 19-2514. At trial, several officers testified regarding the incident and their interactions with Jaramillo. During direct examination by the prosecutor, one officer testified that Jaramillo had asked for an attorney. The prosecutor also asked if Jaramillo had said anything to the officer other than what had already been testified to, and the officer responded that Jarmillo did not. Jaramillo's counsel made no objection to either exchange. Jaramillo also testified on his own behalf, denying that he had stolen or driven the vehicle and asserting that, when officers arrested him, he was simply walking home after a day of heavy drinking and fishing. The jury subsequently returned a verdict of guilty, and Jaramillo admitted to the DUI enhancement and to being a persistent violator. The district court sentenced Jaramillo to concurrent unified terms of fourteen years, with minimum periods of confinement of five years. Jaramillo appeals.

# II.

## STANDARD OF REVIEW

2

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011); *Field*, 144 Idaho at 571, 165 P.3d at 285. Indeed, a fair trial is not necessarily a perfect trial. *Ellington*, 151 Idaho at 62, 253 P.3d at 736; *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991); *State v. Estes*, 111 Idaho 423, 725 P.2d 128, 133 (1986).

The standard of review applicable to allegations of prosecutorial misconduct varies depending on whether the defense made a contemporaneous objection. *State v. Perry*, 150 Idaho 209, 220, 245 P.3d 961, 972 (2010). Because Jaramillo did not make a contemporaneous objection, he must establish that the alleged misconduct was so egregious as to constitute fundamental error by showing that: (1) the alleged error violates one or more of his unwaived constitutional rights; (2) the alleged error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) there is a reasonable possibility that the alleged error affected the outcome of his trial. *See id.* at 226, 245 P.3d at 978.

## III.

## ANALYSIS

Jaramillo argues that the prosecutor committed misconduct[1] by allegedly eliciting testimony regarding Jaramillo's post-custody silence and request for counsel. The Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself or herself. U.S. CONST. AMENDS. V, XIV; IDAHO CONST. art. I, § 13; *Ellington*, 151 Idaho at 60, 253 P.3d at 734. The United States Supreme Court has interpreted this right also to bar the prosecution from commenting on a defendant's invocation of that right. *Griffin v.*

---

[1] We note that the phrase "prosecutorial misconduct" has become a term of art describing the wide range of errors, from the innocent to the nefarious, that a prosecutor may commit during the course of a prosecution. *See, e.g.*, *Namet v. United States*, 373 U.S. 179, 186 (1963) (the first use of the phrase "prosecutorial misconduct" in an opinion by the United States Supreme Court). By use of the term, we do not imply that the prosecutor's actions were intentional or particularly worthy of reproach; instead, it acknowledges the phrase's employment as universal shorthand to describe what may more fittingly be called prosecutorial error.

*California*, 380 U.S. 609, 613-14 (1965). Although the Court permits the use of pre-*Miranda*[2] silence for impeachment purposes, the Court has not spoken as to whether clear invocation of the right to remain silent before *Miranda* warnings have been given may be used as substantive evidence of guilt. *See Salinas v. Texas*, ___ U.S. ___, ___, 133 S. Ct. 2174, 2179-84 (2013) (holding that no Fifth Amendment violation occurs through use of a defendant's pre-custody, pre-*Miranda* silence as substantive evidence of guilt if the defendant does not clearly invoke the right to remain silent, but not reaching the question of whether the same would be true in light of a clear invocation of that right). However, the Idaho Supreme Court has held that a defendant's right to remain silent attaches upon custody, not arrest or interrogation, and thus a prosecutor may not use any post-custody silence to infer guilt in its case-in-chief. *Ellington*, 151 Idaho at 60, 253 P.3d at 734; *State v. Moore*, 131 Idaho 814, 820-21, 965 P.2d 174, 180-81 (1998). Similarly, a prosecutor may not use a defendant's post-custody request for counsel as substantive evidence of guilt. *State v. Parton*, 154 Idaho 558, 567, 300 P.3d 1046, 1055 (2013). That being said, the constitutional right against self-incrimination is not absolute and applies only when the silence is used solely for the purpose of implying guilt. *Ellington*, 151 Idaho at 61, 253 P.3d at 735; *Moore*, 131 Idaho at 821, 965 P.2d at 181.

## A.     Post-Custody Silence

Jaramillo contends that the prosecutor elicited testimony from one of the officers that constituted a comment on Jaramillo's post-custody silence. This allegedly occurred at the close of the prosecutor's direct examination when he asked the officer, "Other than what you've already testified to, did [Jaramillo] say anything else to you that night?" to which the officer responded "No, he did not."

Jaramillo argues that this exchange is functionally equivalent to the exchange held to be prosecutorial misconduct in *Ellington*. There, the prosecutor had the following exchange with an officer during direct examination:

Q.     At the time that you got there and he was in the back of that patrol car, was he under arrest?
A.     Yes.
Q.     And so you did not interview him?
A.     I attempted to.

---

[2]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

*Ellington*, 151 Idaho at 59, 253 P.3d at 733. Although it was unclear from the record what the prosecutor was trying to establish with the questioning, the Court noted it was likely the jury would infer that questioning was only "attempted" because the defendant had exercised his right to remain silent. *Id.* at 61, 253 P.3d at 735. The Court determined that this violated the defendant's constitutional rights because the state could not "provide any reason why it was at all relevant" to ask the question. *Id.* Indeed, the Court noted that "there was absolutely no reason for the prosecutor to engage in this line of questioning in the first place," especially since the line of questioning had a high probability of eliciting an improper response. *Id.*

The comment and situation in this case are distinguishable from what occurred in *Ellington*. Unlike the line of questioning at issue in *Ellington*, the question here was for a reasonable purpose. Immediately following the challenged exchange, the prosecutor asked the officer "Did [Jaramillo] indicate how he came to be in the middle of [the road]?" Jaramillo's defense counsel objected to the question as leading before the officer could answer, resulting in a sidebar off the record. The contents of that sidebar were later placed on the record, in which the district court expressed concerns that the prosecutor was getting close to commenting on Jaramillo's post-custody, pre-*Miranda* silence. The prosecutor clarified that he was attempting to elicit testimony regarding a specific statement that Jaramillo had made after being arrested. This claim was supported by the prosecutor's leading question following the officer's negative response. Indeed, in the context of the questioning as a whole, the question appears as a catchall to ensure that the officer was able to testify as to all that Jaramillo had said to him, not an attempt to comment on Jaramillo's post-custody silence. The question also did not run the same risk of eliciting an improper response as the questioning in *Ellington*, as it did not reference a police interview or otherwise suggest that Jaramillo refused to answer police questions. Moreover, the officer's response was not such that the jury was likely to infer that Jaramillo was refusing to talk to the officer or answer his questions. The officer provided a simple negative response to a facially neutral question that was intended to elicit testimony regarding a statement that Jaramillo had made. Such is insufficient to constitute the kind of commentary held to be prosecutorial misconduct in *Ellington*. As a result, Jaramillo has failed to establish a clear violation of his constitutional rights as a result of the prosecutor's conduct in this regard.

5

**B.** **Post-Custody Request for Counsel**

Jaramillo also alleges that the prosecutor violated Jaramillo's constitutional rights by eliciting testimony regarding his post-custody request for counsel. This, he claims, occurred during the following exchange:

> Q. Okay. So what did you do once you had him in custody?
> A. I placed him in the backseat--well, he was in the backseat of my patrol car, and I transported him to the courthouse to the jail, outside the sally port.
> Q. And what did you do then?
> A. I asked him if he needed EMS to come check him out.
> Q. And what did he indicate?
> A. He said "No. But I want my attorney."
> Q. Okay. Did you transport him to the hospital as well?
> A. I did.
> Q. And what was the purpose of that?
> A. To assist . . . with the blood draw.

Similar to comments on post-custody silence that are solely intended to imply guilt, comments on a defendant's post-custody invocation of the right to counsel are improper if made without a relevant permissible purpose other than implying the defendant's guilt. *Parton*, 154 Idaho at 567-68, 300 P.3d at 1055-56; *see also Ellington*, 151 Idaho at 61, 253 P.3d at 735. This is because invoking the right to counsel is the functional equivalent of invoking the right to remain silent, as it effectively terminates all questioning by police until an attorney is present. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). As a result, commenting on invocation of the right for the sole purpose of implying guilt creates the same Fifth Amendment self-incrimination concerns as comments on a defendant's silence and constitutes prosecutorial misconduct. *See Parton*, 154 Idaho at 567-68, 300 P.3d at 1055-56.

Here, after the officer indicated that he had asked Jaramillo if he needed medical assistance, the prosecutor asked what Jaramillo said in response, and the officer testified that Jaramillo said "No. But I want my attorney." Although there is no indication that the prosecutor intended to elicit the additional response from the officer, the statement is still attributable to the state. *See Ellington*, 151 Idaho at 61, 253 P.3d at 735. Moreover, it is unlikely that the prosecutor was unaware that such an open-ended question could produce the gratuitous and improper response. As in *Ellington*, there is no apparent relevant or rational purpose for the line of questioning, other than to disclose what Jaramillo said in response to the only direct question to Jaramillo testified to by the officer. Although there are myriad reasons why any wise

6

person--guilty or innocent--would request the assistance of counsel when accused of a crime, the officer's response to the prosecutor's question created a significant risk that the jury would infer that Jaramillo's invocation was indicative of his consciousness of guilt. Accordingly, Jaramillo has established clear prosecutorial misconduct.

## C.      Harmless Error

However, reversal is warranted only upon a showing that there is a reasonable possibility that the error affected the outcome of Jaramillo's trial. *See Perry*, 150 Idaho at 226, 245 P.3d at 978. Jaramillo has not made such a showing here. Jaramillo's argument regarding the third prong of *Perry* consists of challenging the "circumstantial nature of the case against him, the lack of any physical evidence tying him to the vehicle, his testimony denying involvement in the crimes, and the conflicting testimony of the officers concerning what the person seen near the vehicle was wearing that night." The circumstantial nature of the case and the lack of physical evidence is irrelevant to determining whether there is a reasonable possibility that an error affected the outcome of the trial in a fundamental error analysis. *See State v. Humpherys*, 134 Idaho 657, 661-62, 8 P.3d 652, 656-57 (2000) (overturning prior precedent requiring an additional jury instruction when a case was based entirely on circumstantial evidence and holding that circumstantial evidence and direct evidence inherently possess the same probative value).

Additionally, Jaramillo's testimony denying any involvement in the crime does little to undermine the substantial evidence of Jaramillo's guilt presented by the state. Specifically, the two officers who chased the suspect through the field testified with absolute certainty that Jaramillo was the suspect they saw standing next to the pickup just moments after it crash-landed into the potato field. Despite not actually seeing Jaramillo exit the stolen vehicle, the suspect that officers saw was the only person near the vehicle that night. Further, an officer apprehended Jaramillo on a road bordering the potato field that lay in the direction in which the suspect in the field fled. The officer testified that Jaramillo was heading westward when he was apprehended, which contradicted Jaramillo's testimony that he was heading east toward his residence. Officer testimony further indicated that there was a single set of tracks in the wet, muddy potato field leading in the direction of the area where Jaramillo was apprehended. Importantly, when officers apprehended Jaramillo, he was wet and covered in mud, consistent with having recently run

through a muddy field. One officer also testified that the shoes Jaramillo was wearing matched the basic size and shape of the lone set of tracks leading away from the stolen vehicle.

Finally, although two officers testified that the suspect was wearing shorts and "a gray, long-sleeved, hooded-type sweatshirt," and another officer testified that the suspect was wearing "light-colored shorts and a gray shirt," these descriptions, which were based on brief observations made in the middle of the night by the light of the officers' flashlights, are not inherently incompatible or even inconsistent. Indeed, the officers testified consistently as to the basic description of the clothing the suspect was wearing, which matched the clothing Jaramillo was wearing when apprehended, and that the individual was a tall, skinny, white male--an appropriate physical description of Jaramillo. In light of this substantial evidence, we hold that there was not a reasonable possibility that the prosecutor's error in eliciting testimony regarding Jaramillo's request for counsel affected the outcome of the trial. As a result, the error was harmless beyond a reasonable doubt.

## IV.

## CONCLUSION

Jaramillo failed to establish that the prosecutor committed clear error by eliciting testimony regarding Jaramillo's post-custody silence. Although the prosecutor's elicitation of testimony regarding Jaramillo's request for counsel constituted misconduct, Jaramillo failed to establish a reasonable possibility that the error affected the outcome of his trial. Thus, Jaramillo failed to establish fundamental error. Accordingly, Jaramillo's judgment of conviction for grand theft, felony eluding an officer, and felony DUI, and sentencing enhancement for being a persistent violator of the law, are affirmed.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR**.