**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37372**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2012 Opinion No. 10** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: February 24, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| HAROLD E. GRIST, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

Judgment of conviction and sentences for seven counts of lewd conduct with a minor under sixteen, one count of sexual abuse of a child under sixteen, and two counts of sexual battery of a minor child sixteen or seventeen, <u>affirmed,</u> but <u>sentences</u> <u>modified.</u>

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.
_____

PERRY, Judge Pro Tem

Harold E. Grist, Jr., appeals from his judgment of conviction for seven counts of lewd conduct with a minor under sixteen, one count of sexual abuse of a child under sixteen, and two counts of sexual battery of a minor child sixteen or seventeen. For the reasons set forth below, we affirm Grist's judgment of conviction, but modify his sentences.

**I.**

**FACTS AND PROCEDURE**

In 2005, Grist was charged with seven counts of lewd conduct with a minor under sixteen, I.C. § 18-1508; one count of sexual abuse of a child under sixteen, I.C. § 18-1506(1)(b); and two counts of sexual battery of a minor child sixteen or seventeen years of age, I.C. § 18-1508A. The minor associated with all of the charges was identified in the information as J.M.O.

J.M.O's mother met Grist in 1994 and, shortly thereafter, J.M.O., her younger brother, and her mother began living with Grist. J.M.O. alleged that Grist began abusing her when she was ten years old and that the abuse continued until she moved out after graduating from high school. After a jury trial in 2006, Grist was found guilty of all ten counts. The district court sentenced Grist for the seven counts of lewd conduct with a minor under sixteen to concurrent unified terms of life imprisonment, with minimum periods of confinement of fifteen years. As to the remaining three counts, the district court imposed concurrent determinate periods of confinement of fifteen years, also to run concurrent to his sentences for lewd conduct with a minor under sixteen. Grist's combined sentences equaled life imprisonment, with a minimum period of confinement of fifteen years. Grist appealed.

The Idaho Supreme Court vacated Grist's judgment of conviction and remanded his case for a new trial. *See State v. Grist*, 147 Idaho 49, 205 P.3d 1185 (2009). After retrial by a jury, Grist was again found guilty of all ten counts. The district court sentenced Grist for the seven counts of lewd conduct with a minor under sixteen to concurrent unified terms of life imprisonment, with minimum periods of confinement of ten years. As to the remaining three counts, the district court imposed consecutive determinate periods of confinement of five years, also to run consecutive to his sentences for lewd conduct with a minor under sixteen. Grist's combined sentences equal life imprisonment, with a minimum period of confinement of twenty-five years. Grist appeals.

## II.

## ANALYSIS

Grist argues that the district court abused its discretion by refusing to permit Grist to impeach a witness at trial with a prior felony theft conviction. Grist also asserts that the district court violated his right to due process by imposing vindictive sentences and, alternatively, abused its discretion by imposing excessive sentences.

### A.    Witness Impeachment

Idaho Rule of Evidence 609(a) provides, in pertinent part:

> For the purposes of attacking the credibility of a witness, evidence of the fact that the witness has been convicted of a felony and the nature of the felony shall be admitted if elicited from the witness or established by public record, but only if the court determines in a hearing outside the presence of the jury that the fact of the prior conviction or the nature of the prior conviction, or both, are

2

relevant to the credibility of the witness and that the probative value of admitting this evidence outweighs its prejudicial effect to the party offering the witness.

Under this rule, the trial court must apply a two-prong test to determine whether evidence of a prior felony conviction should be admitted: (1) the court must determine whether the fact or nature of the conviction is relevant to the credibility of the witness; and (2) if so, the court must determine whether the probative value of the evidence outweighs its prejudicial effect. *State v. Bush*, 131 Idaho 22, 30, 951 P.2d 1249, 1257 (1997).

When reviewing the district court's decision as to the first prong, we exercise free review because relevancy is an issue of law. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). As noted by this Court in *State v. Allen*, 113 Idaho 676, 678, 747 P.2d 85, 87 (Ct. App. 1987), the question of the relevancy of prior felonies for the purposes of attacking a witness's credibility is a thorny one. The "varied relationships between felony convictions and witness credibility have produced much disagreement among courts and commentators about the particular crimes suitable for impeachment." *State v. Pierce*, 107 Idaho 96, 103, 685 P.2d 837, 844 (Ct. App. 1984).

In an attempt to simplify this question, the Idaho courts have divided felonies into three categories having varying degrees of probative value on the issue of credibility. Crimes in the first category, such as perjury, are intimately connected to a person's veracity and credibility, while crimes in the second category, like robbery and burglary, are somewhat less relevant to credibility because they do not deal directly with veracity and have only a general relationship with honesty. *State v. Ybarra*, 102 Idaho 573, 580-81, 634 P.2d 435, 442-43 (1981); *Allen*, 113 Idaho at 678, 747 P.2d at 87. Offenses in the third category, which include crimes of passion and acts of violence that are the product of emotional impulse, have been said to have little or no direct bearing on honesty and veracity. *Ybarra*, 102 Idaho at 580-81, 634 P.2d at 442-43; *Allen*, 113 Idaho at 678, 747 P.2d at 87. Further, the "determination whether evidence of a particular felony conviction is relevant to credibility depends on the particular facts and circumstances of each case and must therefore be decided on a case-by-case basis." *Bush*, 131 Idaho at 31, 951 P.2d at 1258. The case-by-case analysis requires examination of the statute under which the conviction occurred in order to determine into which category the conviction falls. *State v. Muraco*, 132 Idaho 130, 133, 968 P.2d 225, 228 (1998). For example, while theft crimes

3

generally do not involve dishonest or false statements, such crimes may be committed by fraudulent or deceitful means and fall into the first category.

When reviewing the district court's determination as to the second prong--whether the probative value of the evidence outweighs its prejudicial effect--we apply an abuse of discretion standard. *State v. Rodgers*, 119 Idaho 1066, 1072, 812 P.2d 1227, 1233 (Ct. App. 1990), *aff'd*, 119 Idaho 1047, 812 P.2d 1208 (1991). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). We must defer to the discretion of the district court so long as that discretion was not abused. *See State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000).

In *Rodgers*, this Court affirmed the result and analysis employed by the district court when weighing the probative value of a defendant's prior felony conviction against its prejudicial effect. In that case, the district court considered several factors: (1) the impeachment value of the prior crime; (2) the remoteness of the prior conviction; (3) the witness's criminal history; (4) the similarity between the past crime and the crime charged; (5) the importance of the witness's testimony; (6) the centrality of the credibility issue; and (7) the nature and extent of the witness's criminal record as a whole. *Rodgers*, 119 Idaho at 1073, 812 P.2d at 1234. The district court concluded that the prior conviction was relevant to the defendant's credibility and that its probative value outweighed the prejudicial effect. *Id.* This Court held that the district court had not abused its discretion. *Id.* The Idaho Supreme Court concurred in the analysis and disposition of this issue in its review of this Court's decision. *State v. Rodgers*, 119 Idaho 1047, 1052, 812 P.2d 1208, 1213 (1991).

At retrial, Grist sought to impeach a witness of the state with a felony theft conviction the witness received approximately one month prior to the beginning of Grist's second trial. The witness was the younger brother of J.M.O. and testified at both trials that, at a young age, he observed Grist inappropriately touching his sister on one occasion. Grist argued that the witness's theft conviction was relevant because it is a matter of moral turpitude. Grist also argued that the conviction was a crucial piece of evidence because the witness was the only

4

person other than the victim who would testify to any actual observation of an inappropriate physical act by Grist. The state argued that the theft conviction had no relevance to the witness's credibility and, even if the district court found that it did, the prejudicial effect to the state outweighed the probative value and evidence of the conviction should not be admitted.

In determining that Grist could not impeach the witness with the theft conviction, the district court stated:

> I think the issue before the Court is to make a determination as to whether it is evidence which is relevant to the credibility of [the witness]. [The witness] is being asked to give testimony on a relatively limited basis here, only observation of one occurrence that he observed at a very young age. . . .
>
> Second degree theft in the State of Washington would not be one that I would consider to be inherently and intimately connected with the issue of credibility such as perjury. I think this falls more in the middle grounds to determine whether it might be in some way relevant to the credibility of the witness. I think this has very minimal prejudicial--or excuse me, very limited probative value given the limited nature of the testimony that will be solicited from [the witness]. So while I find that the evidence may be relevant to the credibility of [the witness], I find that the probative value of it does not outweigh the prejudicial effect to the state in offering [the witness's] testimony.
>
> . . . .
>
> . . . I think it is minimally relevant for purposes of a witness' credibility and that's really what we are talking about here is a witness [as] opposed to either someone who is alleged to be the victim or a party to the action, it is a witness that we are talking of here. I think it is of first of all, pretty minimal relevance and in order for it to be admissible assuming that it has some relevance, probative value of admitting it would have to outweigh the prejudicial effect of the party offering the witness. And I don't believe that the probative value would outweigh that prejudicial effect, and therefore my ruling stands and that inquiry will not be made of [the witness].

With respect to the first prong of the Rule 609(a) inquiry, theft is a crime like robbery and burglary and, therefore, is less relevant to credibility because it does not deal directly with veracity and has only a general relationship with honesty. Additionally, Grist offered no evidence that the statute under which the witness was convicted included an element of fraud or deceit. As such, we agree with the district court's conclusion that evidence of the witness's felony theft conviction was minimally relevant for impeachment purposes.

As to the second prong, weighing the probative value of the witness's theft conviction against its prejudicial effect to the state, the witness provided limited testimony that merely corroborated his sister J.M.O.'s testimony that, at a young age, the witness observed Grist

5

inappropriately touching J.M.O. on one occasion. The witness did not testify regarding the nine other incidents alleged by J.M.O. resulting in charges against Grist. Accordingly, it was J.M.O.'s credibility that was central to this case. Given the limited testimony of the witness and because he was not the alleged victim or party to the action, his credibility was not central to Grist's case. As such, the probative value of the witness's theft conviction was very low. The district court further determined the state would suffer prejudice if Grist was allowed to impeach the witness with the theft conviction. Specifically, because the conviction was so close in proximity to Grist's second trial, the jury could have believed the witness was recently dishonest and, therefore, his testimony was dishonest. This would be possible even though theft has only a general relationship with honesty and no evidence was presented to show the statute under which the witness was convicted included an element of fraud or deceit.

Given the very low probative value of the witness's theft conviction, we cannot conclude that the district court abused its discretion by determining that the probative value of the witness's prior conviction did not outweigh the prejudicial effect to the state. The district court correctly perceived the issue as one of discretion, acted within the bounds of such discretion and consistently with legal standards applicable to specific choices, and reached its decision by an exercise of reason. Without abuse being shown, we must defer to the discretion of the district court. Accordingly, Grist has failed to show error in the district court's refusal to permit Grist to impeach the witness at trial with a prior theft conviction.

In addition, although we conclude that Grist has failed to show error in the district court's ruling, we agree with the concurring opinion that any error would be harmless in this case. The distinct analysis contained therein of the testimony offered by J.M.O.'s brother, J.M.O., her mother, and the police officer clearly shows that the exclusion of the evidence did not contribute to the verdict rendered against Grist.

**B.    Vindictive Sentencing**

We next address Grist's argument that the district court violated his right to due process by imposing vindictive sentences when the court increased Grist's sentences following his first appeal. Grist acknowledges that he did not raise this assertion to the district court. However, Grist asserts that this Court should address this claim based on the Idaho Supreme Court's decision in *State v. Perry*, 150 Idaho 209, 245 P.3d 1961 (2010). In *Perry*, the Court explained that, if there was no contemporaneous objection made below, an appellate court should reverse

6

when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

With respect to the first prong of *Perry*, Grist asserts that the Idaho Supreme Court's decision in *State v. Robbins*, 123 Idaho 527, 530, 850 P.2d 176, 179 (1993), while decided prior to *Perry*, determined that vindictive sentencing constitutes a fundamental error that can be reviewed for the first time on appeal "because it would go to the foundation or basis of [the defendant's] rights." Grist also asserts that he never waived his right to due process at the subsequent sentencing hearing. However, the state asserts that Grist's claim fails under the first prong of *Perry* because, pursuant to *Stedtfeld v. State*, 114 Idaho 273, 276, 755 P.2d 1311, 1314 (Ct. App. 1988) to show a due process violation, Grist must demonstrate the judge's vindictiveness or intent to punish for exercising his rights.

While the state cites to *Stedtfeld*, the basis for this assertion originated in *State v. Regester*, 106 Idaho 296, 678 P.2d 88 (Ct. App. 1984). In *Regester*, the defendant argued that, based on a comment made by the judge at sentencing after a jury trial, the judge imposed a sentence to punish the defendant for exercising his right to trial. In that context, this Court concluded that, "to show a violation of due process, Regester must demonstrate the judge's vindictiveness or intent to punish him for exercising his right to trial in imposing sentence." *Id.* at 299, 678 P.2d at 91. However, we acknowledged that the United States Supreme Court had not considered the precise issue raised by Regester, but had recognized that vindictiveness must play no part in resentencing. Specifically, we noted that in *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989), the Court held that a defendant, who had successfully attacked his or her conviction and gained a new trial, could not be punished with a longer sentence upon retrial for exercising his or her right to appeal or for otherwise collaterally attacking his or her first conviction. *Regester*, 106 Idaho at 298, 678 P.2d at 90. In that context, the Court determined that, when a court imposes a more severe sentence upon remand, vindictiveness is presumed but may be overcome by objective information in the record justifying the increase. *Pearce*, 395 U.S. at 726. The Court further determined that a court's reasons for imposing an increased sentence must be made part of the

record and based upon identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. *Id*.

In *Stedtfeld*, the defendant contended that the disparity between two sentences he received for separate robberies indicated he was penalized for exercising his right to a jury trial on one of those charges. *Stedtfeld*, 114 Idaho at 274, 755 P.2d at 1312. Specifically, Stedtfeld argued that, because one judge chose to order a ten-year indeterminate sentence for a nearly identical crime, the additional period of another judge's sentence must have resulted from Stedtfeld's exercise of his constitutional right to trial. Because the context of Stedtfeld's case was the same as Regester's case--a defendant arguing that a sentencing judge was vindictive in imposing sentence after an initial jury trial--we concluded that, pursuant to *Regester*, Stedtfeld had to demonstrate the judge's vindictiveness or intent to punish him for exercising his rights to show a violation of due process. *Stedtfeld*, 114 Idaho at 276, 755 P.2d at 1314.

Grist's case, however, does not fall within the context of *Stedtfeld*. Rather, Grist's case falls squarely within the context of *Pearce* because Grist successfully attacked his conviction, gained a new trial, and argues that the same sentencing judge was vindictive for imposing longer sentences upon retrial. As noted above, in such a context vindictiveness is presumed, but may be overcome by objective information in the record justifying the increase. *Pearce*, 395 U.S. at 726. Therefore, Grist was not required to demonstrate the judge's vindictiveness or intent to punish for exercising his rights. Accordingly, Grist's claim does not fail under the first prong of *Perry* because, if the district court imposed vindictive sentences after Grist's retrial as alleged, the district court violated Grist's unwaived right to due process.

Next, the state argues that Grist's claim also fails the second prong of *Perry*. Specifically, the state asserts that, because Grist did not object to the alleged vindictive sentences to the district court, he did not afford the district court the opportunity to rebut the *Pearce* presumption and, therefore, there is a need for additional information not contained in the appellate record. At oral argument, the state relied on *United States v. Vontsteen*, 950 F.2d 1086 (5th Cir. 1992) to support this assertion.

In *Vontsteen*, after a jury found Vontsteen guilty of twenty-one counts of aiding and abetting mail fraud and one count of transporting stolen goods, the district court sentenced Vonsteen to ten years of imprisonment, followed by five years of supervised probation and five hundred hours of community service. *Id.* at 1088. Vontsteen's mail fraud convictions were

reversed on appeal, his entire sentence was vacated, and his case was remanded for resentencing on the count of transporting stolen goods. At the resentencing hearing, the district court increased Vontsteen's sentence. Vonsteen did not object to the sentence at that time. Vonsteen again appealed and raised a *Pearce* claim that Vonsteen's right to due process had been violated because the district court imposed a more severe sentence following his successful appeal and the reasons for doing so did not affirmatively appear on the record.

The court concluded that, because Vontsteen failed to make a contemporaneous objection and alert the district court to the claimed *Pearce* violation, Vontsteen failed to preserve the *Pearce* vindictiveness claim for review and, therefore, the district court's actions would only be reviewed for plain error. *Vontsteen*, 950 F.2d at 1093. Vontsteen attempted to avoid this contemporaneous objection rule by suggesting that use of the word "must" in *Pearce* mandated that whenever a judge imposes a more severe sentence upon remand, the reasons for doing so "must" affirmatively appear. *Vontsteen*, 950 F.2d at 1090. However, the court reasoned that such wording is a general feature of legal rules and does not make their provisions nonwaivable. *Id.* The court also reasoned:

> Moreover, the burden imposed by the contemporaneous objection rule on the defendant's right to be free of judicial vindictiveness is minimal. After the district court has announced its sentence, any vindictiveness present in the resentencing has already occurred. Vontsteen, and defendants like him, have nothing further to fear and nothing to lose by objecting to the sentence.
> In short, any diminution in the defendant's right protected by *Pearce* is outweighed by gains to the adversary system, judicial economy, and appellate orderliness. Vontsteen asks us to remand so that the district court can reconsider and explain its second sentence in light of *Pearce*. But Vontsteen could easily have asked for this relief at the sentencing hearing. "The plain error doctrine is designed to avoid just such a circuitous waste of judicial resources." [*United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991)]. We hold that Vontsteen was required to make a contemporaneous objection to his sentence on grounds of vindictiveness to preserve his claim of *Pearce* error for appeal. *United States v. Forester*, 874 F.2d 983, 984 (5th Cir.), *cert. denied*, 493 U.S. 920, 110 S. Ct. 284, 107 L. Ed. 2d 264 (1989).

*Vontsteen*, 950 F.2d at 1090.

The dissent in *Vontsteen* explained:

> My initial point of difference with the opinion of the majority is its requirement that Vontsteen make a contemporaneous objection at the time he was resentenced in order to avoid plain error review of his appeal of a sentence that, in the words of *Pearce*, could be "unconstitutional" and "vindictive." *Pearce* does

not hold that a trial judge is required to speak reasons into the record. Rather, *Pearce* requires no more than that the reason for an increased sentence "must affirmatively appear" either in the remand record or at some stage of collateral review. The majority says that "must" was used in the rule laid down in *Pearce* merely as a "general feature." If it was not used in its compulsory, obligatory connotation-the definition contained in every dictionary-*Pearce*'s holding loses its meaning. Much more than judicial economy or appellate orderliness is implicated. The appearance of justice is the root of *Pearce*. Unless justice can be seen, injustice must be presumed.

As *Pearce* explains, the purpose of an explicit record showing is to free a defendant from the apprehension of retaliatory motivation that otherwise could chill the right to appeal. It is illogical to require a defendant to object to what the sentencing record fails to show.

*Vontsteen*, 950 F.2d at 1094.

We first note that a majority of other federal circuits have not required that a defendant make a contemporaneous objection at the time of resentencing in order to avoid plain error review of his or her appeal regarding an alleged vindictive sentence. *See United States v. Anderson*, 440 F.3d 1013, 1015-17 (8th Cir. 2006); *United States v. Jackson*, 181 F.3d 740, 744-47 (6th Cir. 1999); *United States v. Rapal*, 146 F.3d 661, 663-64 (9th Cir. 1998); *United States v. Mena-Robles*, 4 F.3d 1026, 1037 (1st Cir. 1993); *United States v. Barry*, 961 F.2d 260, 267-69 (D.C. Cir. 1992); *United States v. Mancari*, 914 F.2d 1014, 1018-22 (7th Cir. 1990); *United States v. Perez*, 904 F.2d 142, 145-46 (2nd Cir. 1990); *United States v. Whitley*, 734 F.2d 994, 996-98 (4th Cir. 1984); *United States v. Monaco*, 702 F.2d 860, 883-85 (11th Cir. 1983). *Vontsteen* is clearly the minority view on this issue.

We agree with the majority of federal circuits, and specifically with the dissent in *Vontsteen*, that the Supreme Court's use of the word "must" in *Pearce* means that, in imposing a more severe sentence upon remand, the district court bears the burden to make the reasons for such sentence part of the record. Otherwise, *Pearce*'s holding loses its meaning. Vindictiveness is presumed, but the presumption may be overcome by objective information in the record justifying the increase. *Pearce,* 395 U.S. at 726. The court's reasons for imposing an increased sentence must be made part of the record and based upon identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. *Id*. Accordingly, we conclude that Grist was not required to make a contemporaneous objection to the district court at the time of resentencing to afford the district court an opportunity to rebut the *Pearce* presumption.

10

We now address whether the vindictive sentencing alleged by Grist is clear or obvious without the need for reference to any additional information not contained in the appellate record. In sentencing Grist after his retrial, the district court stated:

> The primary consideration for any judge, of course, is the protection of society. Other goals of sentencing include deterrence both of you and of others. Part of that is trying to evaluate the likelihood of someone re-offending.
>
> Of less importance is the issue of rehabilitation. It's made more difficult in this situation by the fact that there has certainly been no acknowledgment by you of guilt or participation in these acts which is the first step towards any process of rehabilitation.
>
> The only evaluation that I have at this point in time is the psychosexual evaluation from 2006 which did reach conclusions that you did fit the category of a violent sexual predator with a high likelihood of re-offending. Since that's taken place, there's not been any treatment or further evaluation that would allow me to consider those conclusions any less valid. There's not been any participation in treatment, that's probably a combination of some of the limitations that you now have, Mr. Grist, as well as perhaps some choice on your part to not make any acknowledgment of guilt or participate in any kind of treatment since then.
>
> The final consideration for sentencing, of course, is retribution, the idea of punishment. That also takes into consideration, Mr. Grist, the fact that this is not the first time that you have been in court, not the first time that you have been sentenced on relatively serious offenses of sexual nature.
>
> I'm also considering the update to the progress report from the Department of Corrections setting forth the fact that you were evidently a very minimal disciplinary problem while in a correctional facility, but I also have to take into consideration that there's been no programming or treatment that's been able to take place during that time.
>
> To summarize this, Mr. Grist, I think this was a continual course of conduct directed against the victim in this offense. That conduct took place from your position of trust as a father figure, I think, within that home. You do have the prior record of a felony of sexually related offense and are now back before this Court to be sentenced on ten felony offenses.
>
> In reviewing the information that was prepared after the--in anticipation of the sentencing in 2006, I have gone back and reviewed that. It's kind of unknown to me at this point in time, Mr. Grist, whether you would be able to participate in any program if you were either able to or wanted to, and I have not seen any indication of that to this point.
>
> Therefore, I am going to sentence you as follows. . . .

The only objective information in the record that the district court had regarding Grist's conduct after the time of his original sentencing was the progress report from the Idaho Department of Correction. This report summarized:

11

> Mr. Grist has been incarcerated with the Idaho Department of Correction since September 27, 2006. He was originally sentenced to a minimum of 15 years up to life on the Lewd Conduct with a Child Under 16 charge. Since that time, it does not appear that he has had any opportunity to do any programming and due to his medical issues has been unable to work on any schooling or work. It does not appear that Mr. Grist has been a problem since incarcerated, however, he has had some minor rule violations which have been dealt with through verbal warnings.

However, the district court's reasons that appear in the record for imposing increased sentences are that there was "no programming or treatment that's been able to take place" probably because of a "combination of some of the limitations" that Grist had and "perhaps some choice on [Grist's] part to not make any acknowledgment of guilt or participate in any kind of treatment." The district court further commented that it was unknown whether Grist "would be able to participate in any program if [he] were either able to or wanted to" and the district court had "not seen any indication of that."

While failure to acknowledge guilt may indicate a lack of rehabilitative potential, maintaining a position of innocence as Grist has done here, without additional conduct subsequent to the original sentencing, is insufficient to justify an increased sentence. Further, being a minimal disciplinary problem while incarcerated and unable to participate in programming or treatment does not constitute identifiable conduct on the part of Grist after the time of his original sentencing that justifies a ten-year increase in the determinate portion of his sentences. Accordingly, the district court's increase of Grist's sentences violated his unwaived right to due process.[1] Such error is clear or obvious without the need for reference to any additional information not contained in the appellate record.

With respect to the third prong of *Perry*, the error obviously affected the outcome of the sentencing proceedings because Grist's combined minimum period of confinement increased by ten years. Therefore, Grist has met all three prongs of *Perry*. For relief, Grist acknowledges that the sentences he originally received were reasonable and asks this Court to reduce the determinate portion of his sentences to that originally imposed by the district court. Accordingly, we modify the twenty-five-year determinate portion of Grist's combined sentences

---

[1] This conclusion does not mean that the district court was actually personally vindictive or motivated by malice. Rather, the record concerning Grist's conduct occurring after the time of the original sentencing does not overcome the procedural presumption mandated by *Pearce.*

12

to the fifteen-year determinate term originally imposed. It is therefore unnecessary to address Grist's alternative argument that his sentences are excessive.

## III.

## CONCLUSION

The district court did not abuse its discretion by determining that evidence of a witness's prior felony theft conviction would not be admitted in this case. However, the increase in the determinate portion of Grist's sentences violated his right to due process. We, therefore, affirm Grist's judgment of conviction, but modify the twenty-five-year determinate portion of Grist's aggregate sentences to the fifteen-year determinate terms originally imposed by the district court. The district court is hereby directed to enter an amended judgment of conviction consistent with this opinion.

Judge GUTIERREZ **CONCURS**.

Judge LANSING, **CONCURRING IN THE RESULT**

I concur in the majority opinion's analysis and resolution of the vindictive sentencing issue, but I cannot agree that the district court acted correctly in precluding impeachment of a prosecution witness with that witness's conviction for grand theft.

The witness, J.M.O.'s brother, testified for the State that he once saw Grist licking J.M.O.'s chest when she was ten years old and the witness was about seven. The district court disallowed impeachment evidence that this witness had been convicted of grand theft, holding that the probative value of the evidence did not outweigh its prejudicial effect on the State's case. Thus, the question presented is whether the district court correctly weighed the evidence's probative value against the potential prejudicial impact.

I agree with the majority's assessment that the excluded evidence bore only minimal probative value to impeach the witness, but I can discern no counterbalancing risk of prejudice that would justify depriving the defense of whatever impeachment value the evidence carried. The Idaho appellate courts have often said that for a risk of prejudice to warrant the exclusion of relevant evidence, the prejudice must be *unfair*; that is, it must suggest a decision on an improper basis. *See State v. Moore*, 131 Idaho 814, 819, 965 P.2d 174, 179 (1998); *State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010); *State v. Carlson*, 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct. App. 2000); *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994).

Evidence is not unfairly prejudicial merely because its probative value is detrimental to the opposing party. *Floyd*, 125 Idaho at 654, 873 P.2d at 908.

The majority opinion takes the view that the evidence of the witness's theft conviction was excessively prejudicial because "the jury could have believed the witness was recently dishonest and, therefore, his testimony was dishonest." That states, in substance, that the evidence was prejudicial to the prosecution because it cast doubt on the witness's credibility--which is the very reason it is relevant in the first place. It is also the very reason that Idaho Rule of Evidence 609 permits evidence of a witness's felony conviction for impeachment purposes. To say that evidence is unfairly prejudicial because it possesses the probative value that makes it relevant is a non sequitur. Therefore, I would hold that the trial court erred in excluding this evidence.

An error in exclusion of evidence does not necessarily warrant reversal of a conviction, however, for trial error will be deemed harmless if it can be said "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010). I conclude that the error here was harmless. First, as noted above, the impeachment value of the excluded evidence was insubstantial. It would have, at most, cast doubt on the witness's general veracity; it did not in any way actually controvert his testimony about the abuse he claimed to have observed as a young child, nor did it suggest any motive for him to present false testimony against Grist.

Second, the credibility of J.M.O.'s brother was not crucial to the State's case. It was the jury's assessment of J.M.O.'s credibility that ultimately determined whether Grist would be found guilty. I appreciate Grist's argument on appeal that the brother's testimony lent important corroboration to J.M.O.'s accusations, but the fact remains that even if the jury had completely rejected the brother's testimony as untrue, such rejection would have given the jury no reason to similarly doubt J.M.O.'s credibility. That is, discrediting J.M.O.'s brother would not have discredited J.M.O.

Further, J.M.O.'s testimony was somewhat bolstered by that of her mother. Although J.M.O. did not report the alleged abuse to authorities until some ten years after it allegedly began, her mother verified J.M.O.'s testimony that at a point early in the abuse, J.M.O. disclosed

14

it to her mother, but her mother accepted Grist's explanation that it had been just innocent playing and tickling.

Also bearing somewhat on J.M.O.'s credibility was the testimony of the police officer who interviewed her following her report of the abuse to authorities. This officer testified that as J.M.O. described the molestations, she became increasingly emotional and at times was sobbing. This description of her demeanor was probative of her sincerity and the actuality of the abuse.

In sum, considering the context of the entire trial, I am persuaded beyond a reasonable doubt that the district court's error in preventing impeachment of J.M.O.'s brother with evidence of his prior theft conviction did not contribute to the verdict obtained. Therefore, I concur with the affirmance of Grist's judgment of conviction, with modification of his sentences as directed in the majority opinion.