**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 50026**

| | | |
|---|---|---|
| STATE OF IDAHO | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | **Boise, December 2023 Term** |
| v. | ) | |
| | ) | **Opinion Filed: February 29, 2024** |
| DEVELIN LYNN JOHNSON, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Roger B. Harris, District Judge. Thomas Kershaw, Magistrate Judge.

The district court's decision is <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender, attorney for Appellant. Andrea Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Kenneth Jorgensen argued.

_____

BEVAN, Chief Justice.

Develin Johnson appeals from the district court's intermediate appellate decision affirming his convictions for domestic battery and false imprisonment. On intermediate appeal to the district court, Johnson argued that the magistrate court abused its discretion when it allowed the prosecutor to cross-examine him about a 2013 misdemeanor conviction for petit theft. While the district court initially vacated Johnson's judgment of conviction, the court later granted a petition for rehearing from the State, and ultimately affirmed Johnson's conviction. On appeal to this Court, Johnson argues that the district court erred in affirming his judgment of conviction because his misdemeanor conviction for theft was inadmissible under Idaho Rule of Evidence 608(b) and the probative value of the evidence was substantially outweighed by a danger of unfair prejudice. For the reasons below, we affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Johnson was charged with domestic battery and false imprisonment following a fight with his girlfriend, K.C. The case proceeded to a jury trial, and K.C. was the first witness for the State. During her testimony, K.C. acknowledged she was in a romantic relationship with Johnson and living with him. Following a verbal argument at their home that escalated throughout the day, K.C. testified she tried to remove herself from the argument and leave the bedroom, but Johnson physically prevented her from doing so. Johnson then grabbed K.C., pinning her to the bed, which caused bruising and redness to K.C.'s arms. After K.C. testified, the State presented testimony from Officer Comeau, who testified to witnessing the bruises on K.C. Comeau interviewed Johnson, and Johnson admitted he grabbed "on to [K.C.'s] arms and put her down onto the bed" after K.C. slapped him.

After the State rested, outside the presence of the jury, the magistrate court asked if Johnson intended to testify on his own behalf. Johnson said he would testify. The State said it had "some [I.R.E.] 608 impeachment evidence about a prior incident from a few years ago where the defendant was using a credit card without permission and admitted it to police." Counsel for Johnson said he would object if the State attempted to introduce Johnson's prior conviction. The State argued that "a theft case . . . squarely falls within credibility and squarely is impeachment evidence." In response to the magistrate, the State conceded it would not talk about Johnson's conviction "unless, you know, the defendant denies it in some way."

Ultimately, the magistrate court concluded Johnson's conduct during that crime "would be relevant to his character for truthfulness"; thus, admissibility was "just a 403 question." According to the magistrate, "whether it's unfairly prejudicial, that is, if the prejudice outweighs its probative value, substantially outweighs, then it would still be inadmissible under Rule 403." The court elaborated, "it's a close case, only because it's so old," but "[i]n this situation I don't think it does substantially outweigh," and so "I will allow that question to be asked."

Johnson took the stand to testify in his own defense, describing his version of events during the argument with K.C. On cross-examination, Johnson testified that he was "telling the truth" and was "a very honest man." During cross-examination, the following exchange took place between the State and Johnson:

[The State]: All right. And I'm assuming you're telling the truth today?

[Johnson]: Yes, sir, I am telling the truth.

[The State]: Because you're an honest man; fair to say?

[Johnson]: I'm a very honest man, sir.

[The State]: Okay. And telling the truth to Officer Cameau at the time about what happened because you're an honest man; is that right?

[Johnson]: Yes.

[The State]: And isn't it also true that in 2013 you had a case where you were investigated for using somebody's debit card multiple occasions to withdraw money?

[Johnson]: Yes.

[The State]: And you did that without their permission?

[Johnson]: Yes.

[The State]: Withdrew about $450 over the course of about three days; is that right?

[Johnson]: Exactly $450, yes, sir.

[The State]: So you remember that very well?

[Johnson]: Yes, sir, I do. Would you like to know the cause or why I did it?

[The State]: Well, I know what you told the police. You said that there was an ex-girlfriend or someone that had kids that you wanted to pay for.

[Johnson]: No, it was my son allegedly. I thought that I was going to be a dad. I had just gotten back from basic training, and I didn't have a job or anything. I was going through a tough time.

[The State]: But you're an honest man?

[Johnson]: I have pride and I didn't think that telling someone's parents of a new girlfriend that you just had that you might be having a kid was a great idea. Once again, that was also eight years ago and I was very young.

[The State]: And that's when you took the debit card and used it seven times to withdraw 450 bucks?

[Johnson]: Yes, and then I sent that money to my ex for our son after he was born.

After both sides rested, the State argued in closing that "the defendant's character for honesty is really important in this case." Counsel for Johnson countered during his closing arguments that "[t]he real question in front of [the jury] is one of credibility." The jury returned guilty verdicts on both counts. The magistrate court sentenced Johnson to 180 days in jail for domestic battery, with 178 days suspended, and credit for two days served. For false imprisonment, Johnson was sentenced to 365 days in jail, with 360 days suspended and credit for two days served. Johnson was placed on probation for 24 months.

Johnson appealed his judgment of conviction to the district court, arguing that the magistrate court erred when it allowed the State to cross-examine him about his 2013 conviction. The district court initially reversed Johnson's conviction, concluding:

> In other words, if the State wants to attempt to attack a witness' character for truthfulness, it can do so by bringing up evidence of past felony convictions, subject to the limitations and balancing tests required by I.R.E. Rule 609(a), or it may attempt to offer evidence about the witness' reputation for truthfulness/ untruthfulness in the form of opinion testimony as allowed by I.R.E. Rule 608(a). Disregarding the notice requirements of I.R.E. Rule 404(b) which should have been filed in advance of trial if the State intended to inquire about specific instances of past criminal conduct (which notice was not given), the State may not discuss a witness' prior instances of specific conduct in an effort to attack that witness' character for truthfulness, except by referencing the existence of prior felony convictions as allowed by I.R.E. Rule 609(a).

After the district court's decision, the State petitioned for rehearing, relying, in part, on *State v. Bergerud*, 155 Idaho 705, 316 P.3d 117 (Ct. App. 2013). In its amended petition for rehearing, the State emphasized that the prosecutor never referred to Johnson's petit theft as a "conviction" before the jury. The district court ultimately agreed because, "although the connotation that Mr. Johnson might have been involved in a criminal case is present, the word 'conviction' [was] never used[.]" From this, the district court "agree[d] with the [m]agistrate's conclusion that theft is typically the type of conduct that is associated with dishonesty, and that the line of questioning was therefore appropriate." Johnson timely appeals.

## II. STANDARDS OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate capacity,

> [t]he Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Houston v. Houston*, 172 Idaho 264, 531 P.3d 1161, 1165 (2023) (quoting *Nelson v. Evans*, 166 Idaho 815, 819, 464 P.3d 301, 305 (2020)). "Importantly, 'this Court does not review the decision of the magistrate court[,]...[r]ather, we are procedurally bound to affirm or reverse the decisions of the district court.'" *Id.* (quoting *Matter of Est. of Hirning*, 167 Idaho 669, 675, 475 P.3d 1191, 1197 (2020)).

4

Separately, "whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Ogden*, 171 Idaho 258, 519 P.3d 1198, 1206 (2022) (quoting *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018)). When this Court reviews a lower court's decision for an abuse of discretion, it must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

### III. ANALYSIS

**A.    The district court did not err in finding that the magistrate court acted within its discretion in allowing the prosecutor to cross-examine Johnson about conduct leading to a 2013 misdemeanor conviction.**

This appeal presents two closely related questions: the first is whether the district court erred in affirming the magistrate court's decision to permit the State to cross-examine Johnson about conduct leading to his 2013 misdemeanor conviction. The second is whether, even if admissible under Idaho Rule of Evidence 608, the prejudicial effect of allowing the State to inquire into Johnson's conduct in 2013 substantially outweighed the probative value of that evidence to judge Johnson's credibility. As we will discuss below, the answer to both questions is no.

*1.    Whether Johnson's petit theft conviction should have been excluded under Idaho Rule of Evidence 608.*

This issue turns on whether the underlying conduct from a conviction for misdemeanor petit theft is probative of a witness's truthfulness. The magistrate court determined it was, and the district court later affirmed that decision. Johnson argues that the conduct leading to his 2013 petit theft conviction was inadmissible under Idaho Rule of Evidence 608(b) because the conduct did not impeach Johnson's character for truthfulness. For the reasons discussed below, we affirm the district court's decision. Even though the State may not inquire into a misdemeanor theft *conviction* under Rule 608(b), the behavior leading to that conviction—i.e., the fraudulent use of a financial transaction card—is probative of a witness's character.

"It is well understood that all 'relevant evidence is admissible, unless otherwise provided by the Idaho Rules of Evidence or other rules for the courts of Idaho.'" *State v. Hayes*, 166 Idaho 646, 654, 462 P.3d 1110, 1118 (2020) (quoting *State v. Ehrlick*, 158 Idaho 900, 926, 354 P.3d 462,

5

488 (2015)). "The burden is on the opponent of the evidence to establish that relevant evidence is otherwise inadmissible." *Id.* (quoting *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 617–18, 726 P.2d 706, 729–30 (1986) (Bakes, J., dissenting)). Under Idaho Rule of Evidence 608(b):

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of … the witness.

On intermediate appeal, the district court first reversed the magistrate court's decision, on the ground that Idaho Rules of Evidence 608 and 609 do not allow the admission of prior misdemeanor convictions:

> In sum, when read together, [Rules] 608 and 609 convince this [c]ourt that using proof of prior convictions to attack a witness' character for truthfulness is not allowed unless the prior conviction is for a felony and that prior felony conviction is of the type that is relevant to truthfulness. Even if the prior felony conviction is of the type involving truthfulness, the court must still perform a balancing test to determine whether the probative value of allowing evidence of the past felony conviction to be admitted outweighs the prejudicial effect doing so will have on the party offering the witness.

Shortly after the district court entered this decision, however, the State petitioned for rehearing. In its brief, the State argued that the Idaho Court of Appeals' decision in *State v. Bergerud*, 155 Idaho 705, 316 P.3d 117 (Ct. App. 2013), held that the facts of a misdemeanor relating to honesty are admissible under Rule 608(b), without deciding whether the conviction itself was proper for impeachment. *Bergerud* applied to the cross-examination of Johnson, according to the State, because no evidence of a conviction or criminal case was ever presented to the jury.

Following oral arguments from the State and Johnson, the district court reversed its earlier decision and agreed with the State:

> [T]his [c]ourt acknowledges and notes that although the connotation that Mr. Johnson might have been involved in a criminal case is present, the word "conviction" is never used. As such, this [c]ourt must acknowledge that when this appellate issue was originally put before this [c]ourt in May of 2022, this [c]ourt incorrectly read the above quoted colloquy and interpreted the questions to imply that Johnson was being questioned about a prior misdemeanor conviction, and therefore focused much of its original June 2022 [m]emorandum [d]ecision analysis on that premise and I.R.E. 609.
>
> After now re-reviewing the record and evidence before it, this [c]ourt must find that its original understanding of the questions and connotation contained therein cannot stand. It is clear that the State never referenced a "conviction" as it

attempted to impeach Johnson's credibility, and that it only questioned Mr. Johnson about the specific instances of the 2013 case during cross-examination which appears to be allowed under I.R.E. 608(b) and the *Bergerud* holding.

> . . . .

> . . . [B]ecause the State did not utilize the word "conviction" nor did it attempt to present extrinsic evidence of a past misdemeanor conviction while attempting to impeach Mr. Johnson's character for truthfulness, the [c]ourt finds that the *Bergerud* case and I.R.E. 608(b) allowed the State to question Mr. Johnson about the specific instances of conduct surrounding his 2013 petit theft case. This [c]ourt agrees with the [m]agistrate's conclusion that theft is typically the type of conduct that is associated with dishonesty, and that the line of questioning was therefore appropriate.

On appeal to this Court, Johnson advocates that Rule 608 is strictly limited to prior instances where the witness lied, perjured himself, or acted dishonestly. Johnson directs this Court to *State v. Hayes*, 166 Idaho 646, 650, 316 P.3d 1110, 1114 (2020), in support of his argument. In that case, Hayes (an inmate) was charged with two counts of felony battery on a correctional officer. *Id.* at 649, 462 P.3d at 1113. At trial, Hayes testified on his own behalf. *Id.* at 650, 316 P.3d at 1114. During cross-examination, the State asked Hayes about his conduct toward correctional officers and other inmates at the prison. *Id.* After Hayes testified that he was "always respectful" to correctional staff and inmates, the State requested, outside the presence of the jury, to question Hayes about his prior conduct. *Id.* The State wanted to question Hayes about ten prior instances where he threatened or orally abused other inmates and correctional staff. *Id.* The district court permitted the questions, concluding the testimony was relevant to Hayes' character and truthfulness under Rule 608(b). *Id.*

On appeal, this Court disagreed with the district court, concluding that, although Hayes' prior conduct was relevant, it was not admissible under Rule 608 because none of the prior instances the State asked about related to a situation that reflected on Hayes' character for truthfulness. *Id.* at 656, 462 P.3d at 1120. In reaching that decision, this Court examined Idaho's rule against its federal counterpart: "After examining this Court's precedent and interpretations of the federal rules, . . . I.R.E. 608(b) applies to prior instances of conduct that bear on a witness's character for truthfulness or untruthfulness. These situations are limited to prior instances where the witness lied, committed fraud, or otherwise acted untruthfully." *Id.* Even so, the Court held that Hayes' prior instances of conduct were still admissible as direct impeachment evidence under Idaho Rule of Evidence 607.

7

*Hayes* is of little help to Johnson here. Hayes' conduct involved threats and abusive language, which this Court clarified were not probative of a witness's character for truthfulness. Johnson's conduct, on the other hand, involved fraudulently using another person's debit card seven times without permission. Johnson held himself out as the owner of someone else's debit card. Such behavior reflects on Johnson's character for truthfulness, unlike Hayes' threats and verbal abuse, which reflected on his history of violence. This Court was clear in *Hayes* that Rule 608(b) applies to situations in which the witness acted untruthfully. Johnson's conduct reflects such a situation.

We find *State v. Bergerud*, which the State and the district court both relied on below, more persuasive here. Daniel and Kathleen Bergerud were convicted on several drug-related charges. 155 Idaho at 707, 316 P.3d at 119. The State called Robert Jones during its rebuttal; Jones had stayed at the Bergeruds' home. *Id.* at 709, 316 P.3d at 121. Jones had pleaded guilty to a misdemeanor charge of providing false information to a police officer in an unrelated case. *Id.* On cross-examination, defense counsel wanted to ask Jones whether he had ever lied to the police. *Id.* If he denied lying to police, defense counsel wanted to impeach Jones with his prior conviction. *Id.* The State objected to the defense's proposed questions, arguing the cross-examination was prohibited under Rules 608 and 609. *Id.* The district court agreed and excluded questions from the defense about Jones' prior conviction because the crime was not a felony and lying to police was not probative of Jones' credibility. *Id.*

The Court of Appeals reversed the district court's decision, concluding that "[e]ven with evidence of the misdemeanor conviction itself barred, nothing in either Rule 608(b) or Rule 609 precludes evidence of untruthful conduct merely because the conduct resulted in a conviction." *Id.* at 711, 316 P.3d at 123. If it did, the Court of Appeals explained, a witness could be cross-examined about prior conduct only if the charge was dismissed but would otherwise be prohibited from inquiring into conduct that resulted in a conviction. *Id.*

We also look to *State v. Grist*, 152 Idaho 786, 275 P.3d 12 (Ct. App. 2012), which both parties have cited in this appeal. There, Grist argued that the district court abused its discretion by not allowing him to impeach a witness with a prior felony theft conviction. *Id.* at 789, 275 P.3d at 15. During Grist's trial, a witness testified to observing Grist inappropriately touch his sister. *Id.* at 790, 275 P.3d at 16. On cross-examination, Grist wanted to inquire into the witness's earlier theft conviction, which he argued was important because the witness was the only person other

than the victim who testified to observing Grist engage in inappropriate physical conduct. *Id.* The State maintained that the conviction had no relevance to the witness's credibility, and the prejudicial nature of the question outweighed its probative value. *Id.* The Court of Appeals agreed with the district court's conclusion that the witness's second-degree theft charge had little relation to the witness's character for truthfulness. *Id.* According to the Court of Appeals, "theft is a crime like robbery and burglary and, therefore, is less relevant to credibility because it does not deal directly with veracity and has only a general relationship with honesty." *Id.* The Court of Appeals explained that "Grist offered no evidence that the statute under which the witness was convicted included an element of fraud or deceit." *Id*

We conclude that both *Grist* and *Bergerud* support the district court's conclusion that Johnson's underlying conduct was probative to his character for truthfulness. In *Grist*, the Court of Appeals held that a theft charge was "somewhat less relevant to credibility" than crimes like perjury "because [theft crimes] do not deal directly with veracity and have only a general relationship with honesty." 152 Idaho at 789, 275 P.3d at 15. That said, perjury is not the only crime about which a witness may face cross-examination under I.R.E. 608. The *Grist* court's statement that theft-related acts, especially when they involve dishonesty, *are* relevant to veracity and honesty, even if less relevant than crimes involving actual false statements, is sound and supports the conclusion we reach today.

In addition, *Bergerud* clarified the distinction between a misdemeanor *conviction* and the *conduct* that results in that conviction. Relying on this case, the district court noted that it was "clear that the State never referenced a 'conviction' as it attempted to impeach Johnson's credibility, and that it only questioned Mr. Johnson about the specific instances of the 2013 case during cross-examination which appears to be allowed under I.R.E. 608(b) and the *Bergerud* holding."

To that end, the only party that referenced Johnson's theft "charge" in front of the jury was Johnson's attorney, who questioned him about the charge and decision to plead guilty on redirect:

[Defense Counsel]: The theft charge, do you remember what year that was?

[Johnson]: 2013.

. . .

[Defense Counsel]: Okay. Do you remember how that case was resolved? Did you plead guilty?

9

[Johnson]: I ple[d] guilty, yes.

[Defense Counsel]: You ple[d] guilty. Do you accept responsibility for an act you did when you were 19?

[Johnson]: Yes, of course, I do. I was a young, dumb child.

As the district court noted in its amended memorandum decision, the State never mentioned Johnson's conviction, charge, or guilty plea. During oral arguments here, Johnson correctly noted one reference the State made, in which the prosecutor acknowledged Johnson "had a case." This statement was made without objection and occurred after the magistrate court conducted its Rule 608 and 403 analyses. We will not fault the court for allowing unobjected-to evidence that was not before it at the time it rendered its ruling in limine. With no reference to Johnson's *conviction* from the State, our focus is on whether Johnson's conduct surrounding the theft may be properly inquired into on cross-examination. We conclude that it can.

Idaho Rule of Evidence 608 permits inquiry into conduct that is probative for truthfulness. I.R.E. 608. While this Court has not explicitly held that theft may be the type of conduct that bears on one's character for truthfulness or untruthfulness, we do so now. In *Hayes,* we acknowledged that Idaho Rule of Evidence 608(b) applies to conduct that bears on a witness's character for truthfulness, which includes situations where the witness "acted untruthfully." *Hayes*, 166 Idaho at 656, 462 P.3d at 1120. We reemphasize that conclusion in this opinion.

In some cases, such as in this case, acts leading to a theft conviction may encompass lying, deception, dishonesty, or fraud. In other cases, they may not. While theft can occur without directly making a false or dishonest statement, in cases like this one, deception, dishonesty, and fraudulent conduct are at the heart of the criminal conduct at issue. Whether such evidence is probative on one's character for truthfulness will have to be assessed by trial judges case-by-case. Although Johnson ultimately pleaded guilty to a misdemeanor petit theft charge, the acts he committed, as noted by the prosecutor in cross-examination, involved repeatedly using another person's debit card implicitly representing himself as that person, and obtaining funds fraudulently as a result. This conduct is probative of Johnson's character for truthfulness and was relevant under Rule 608. As a result, the district court did not err in concluding the magistrate court did not err in making this relevancy determination.

*2. Whether Johnson's petit theft conviction should have been excluded under Idaho Rule of Evidence 403.*

Johnson argues that the district court erred in failing to address Idaho Rule of Evidence 403 when it issued its decision reversing itself on the Rule 608 issue. Had the district court analyzed the second question presented to it under Rule 403, Johnson maintains it would have upheld its initial decision reversing the magistrate court one those grounds. While the State concedes that the district court did not conduct a Rule 403 balancing test in its second opinion, it points out that the district court did address the Rule 403 issue in its initial opinion and maintains that the error by the district court was harmless.

We review the district court's opinion with due regard, but independently. We are tasked to review the magistrate court's exercise of discretion on the Rule 403 question. In addition, we independently review the magistrate court's exercise of discretion to see whether its decision-making process tracks the four-prong test set forth above. *See State v. Ochoa*, 169 Idaho 903, 912, 505 P.3d 689, 698 (2022) ("to determine whether there was an abuse of discretion, we independently review the record of the proceeding before the magistrate court."). Requiring us to remand this question to the district court for a do-over is unnecessary since we can make this determination now, with the entire record that is before us—the same record that would be before the district court on remand. *See, e.g.*, *Rodriquez v. State*, 171 Idaho 634, 524 P.3d 913, 924 (2023) (declining to remand when doing so would not change the outcome); *Idaho v. Mummert*, 98 Idaho 452, 455, 566 P.2d 1110, 1113 (1977) (same). Since the record of the magistrate court's decision-making process is sufficient, we can make this decision under our standard of review.

Under Idaho Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This rule requires the court to balance the probative value of the evidence against the danger that the evidence may be unfairly prejudicial. *See* I.R.E. 403. "Unfair prejudice" is prejudice that "tends to suggest a decision on an improper basis." *State v. Diaz*, 170 Idaho 79, 91, 507 P.3d 1109, 1121 (2022) (quoting *State v. Moore*, 131 Idaho 814, 819, 965 P.2d 174, 179 (1998)).

For the reasons discussed below, we hold that the magistrate court did not abuse its discretion when it conducted its Rule 403 analysis., Specifically, when we review its analysis, we

11

conclude that the record demonstrates the magistrate court exercised reason in ruling that the evidence was admissible.

During Johnson's trial, the magistrate court conducted a colloquy with the State and Johnson to perform its obligation under Rule 403: to weigh the probative value of Johnson's earlier theft conduct against the prejudicial effect of allowing the inquiry.

> [THE COURT]: I think the question would be just a 403 question.
>
> Given that it's eight years ago and it's petit theft for whatever the facts are, is it more prejudicial than probative as to its credibility? Is that what you're saying?
>
> [JOHNSON'S COUNSEL]: I think that is a perfectly fair analysis, yes, Your Honor.
>
> [THE COURT]: So what's your response to that issue, Mr. [prosecutor]?
>
> [PROSECUTOR]: Well, I'll point out the question is not just prejudice because obviously it does prejudice the jury as to his truthfulness to talk about these issues. The question is if it's prejudicial in an unfair way.
>
> [THE COURT]: Yeah, if it outweighs –
>
> [PROSECUTOR]: If it substantially outweighs the probative value. His credibility is directly at issue if he testifies in the case. So I would say his credibility absolutely is an important issue in the case where we have two people saying two different things.
>
> The prejudicial part of it, if this were a theft case, then I think there might be a problem with prior bad acts and unfair prejudice because then I think we could say, well, this is repeated conduct. That's what the rules try to get away from is to say we don't want to have the jury think, well, he did it before, he's doing it again.
>
> But because these charges are totally unrelated, I . . . think that prejudicial analysis just doesn't apply because this is not a case about theft. It's not a case about any of those issues.
>
> . . .
>
> [THE COURT]: Well, I mean, it's some concern to me that it's so long ago. Sometimes that's an issue.
>
> [JOHNSON'S COUNSEL]: That is one point.
>
> . . .
>
> [THE COURT]: Okay. Well, I certainly think it's probative of his character for truthfulness so it would be generally admissible under Rule 608(b).
>
> So then the question becomes whether it's so unfairly prejudicial, that is, if the prejudice outweighs its probative value, substantially outweighs, then it would still be inadmissible under Rule 403.

I think it's a close case, only because it's so old. We're talking eight years ago, roughly, and I think that's an issue because people's nature sometimes changes over time.

In this situation I don't think it does substantially outweigh, and, by the way, I don't know how this is all going to come out in front of the jury. He may have explanations that will be, you know, that nobody anticipates, but I will allow that. I will allow that question to be asked.

From Johnson's perspective, the evidence had no probative value, and the danger of unfair prejudice was extremely high. But as discussed above, theft involving deceit or fraud can be probative of a witness's character for truthfulness or untruthfulness. The nature of Johnson's theft, using another's debit card to secure cash, is especially so. That misconduct is defined by our legislature as a fraudulent act. *See* I.C. § 18-3124(4)(c). And it is the nature of the wrongful conduct, not the moniker of the ultimate conviction (here petit theft) that drives the determination of whether the evidence is "probative of the [witness's] character for truthfulness or untruthfulness." I.R.E. 608(b). The acts constituting Johnson's conduct are probative of his character for truthfulness.

Weighed against the probative value of such evidence is the potential unfair prejudice of this evidence toward Johnson. Importantly, mere "prejudice" is not the benchmark; the benchmark is whether the evidence is *unfairly prejudicial* so that a jury could make its decision on an unfair inference from the evidence. *See State v. Rambo*, ___ Idaho ___, ___, 540 P.3d 974, 983 (2023) (quoting *State v. Diaz*, 170 Idaho 79, 91, 507 P.3d 1109, 1121 (2022)).

We disagree with Johnson's assertion that the evidence was unfairly prejudicial. It is important to remember that in this case Johnson was charged with a crime of violence. The character evidence derived from Johnson's 2013 theft conviction did not improperly invite the jury to infer that Johnson was violent. This is not a "because he did it before, he did it here" type of case; instead, this case centered on credibility, and the evidence surrounding Johnson's conduct in 2013, while certainly prejudicial, is not unfairly so, as the magistrate court recognized.

We conclude that the magistrate court did not abuse its discretion. The magistrate court exercised reason in concluding that the probative value of the evidence in relation to the battery charges was greater than the danger that the jury would infer Johnson was a violent person. Whether Johnson had a character for untruthfulness is precisely *why* this evidence is admissible; such an inference does not make this kind of evidence inadmissible. As a result, the district court correctly affirmed Johnson's conviction on appeal.

13

## IV. Conclusion

The district court's decision is affirmed.

JUSTICES BRODY, MOELLER, ZAHN, and JUDGE MILLER, CONCUR.